**HELVERING, Commissioner of Internal Revenue, v. MANHATTAN LIFE INS. CO.**

**No. 382.**

Circuit Court of Appeals, Second Circuit.

June 11, 1934.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for petitioner.

John F. McCabe, of New York City, for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

■ This is a petition to review an order of the Board of Tax Appeals, determining an overpayment in favor of the respondent for the year 1928. Two questions are presented: The first, whether the respondent, a life insurance company, may deduct from its gross income a depreciation allowance upon so much of its furniture as it used in producing the income of its underwriting department. This is ruled by the decision of the Supreme Court in the case of Rockford L. I. Co. v. Helvering, Com'r, 292 U. S. 382, 54 S. Ct. 761, 78 L. Ed. 1315, which held that such a deduction was not allowable; otherwise as to depreciation upon furniture used in the investment department. As the Board allowed both, the order must be reversed pro tanto.

The second question arises under the following facts: The respondent was the owner of real estate subject to a lease which expired on August 1, 1928. By a payment not here in question it succeeded in getting this lease cancelled on October 1, 1927, and thereafter let the premises to a tenant for a period of ten years. The broker's commissions for procuring the new lease were $9,990 which it paid in the year 1927. On June 28, 1928, the lease was "terminated * * * by court order"; and presumably the respondent re-entered. The Commissioner amortized the whole commission over the period of the lease, dividing it into ten equal annual parts. For the year 1927 he allowed one-fourth, and for the year 1928 substantially one-half, of one annual part; the first corresponding to the last three months of 1927, and the second to the first six months of 1928. He disallowed any further deduction for that year, for which year the respondent claimed all the unamortized commission under section 203

(a), subdivisions 6 and 7 of the Revenue Act of 1928, 26 USCA § 2203 (a) (6, 7).[1] The Board took the respondent's view and the Commissioner appealed.

It has been uniformly held in a number of decisions that the commission of a broker, who secures a tenant for a lessor, may not be deducted in the year in which it is paid, but must be amortized by successive deductions over the span of the lease. Bonwit Teller & Co. v. Com'r, 53 F.(2d) 381, 82 A. L. R. 325 (C. C. A. 2); Central Bank Block Ass'n v. Com'r, 57 F.(2d) 5 (C. C. A. 5); Atwell v. U. S., 1 F. Supp. 720 (Ct. Cl.); Tonningsen v. Com'r, 61 F.(2d) 199 (C. C. A. 9); Spinks Realty Co. v. Com'r, 61 App. D. C. 321, 62 F.(2d) 880; Meyran v. Com'r, 63 F.(2d) 986 (C. C. A. 3); Home Trust Co. v. Com'r, 65 F.(2d) 532 (C. C. A. 8); Griffiths v. Com'r, 70 F.(2d) 946 (C. C. A. 7). The grounds given have been somewhat various. In several cases, our own among others, the court did not commit itself as to whether the payment was an "ordinary and necessary expense," or a capital cost, amortizable out of the rents, the right to which was conceived as a wasting asset. Substantially all of the decisions have considered this second view tenable, and most have repudiated the first. Of course it is true that by and large rents are not capital assets at all; they are the quid pro quo for the lessor's surrender of the usufruct of the land pending the term. Though they end with it, the reversion restores the enjoyment to the lessor, and there has been meanwhile no capital loss to be amortized; the analogy is apt of interest upon a loan. This is not true of a wasting asset. If such an asset has an initial value which ends with the last installment, the owner must recoup himself as he goes; he cannot credit the whole return to income without confusing that concept. Not all initial payments are indeed capital costs, and to be deducted as such, but a broker's commission seems to us pretty plainly such. It is for services which make possible the sale, so to say, of the term, and without which indeed the term could never come into existence; services that therefore help to create the rents, which the lessor will receive. It is like a broker's commission for the sale of a fee which always goes into the "basis" in computing any gain or loss. We are content therefore to assume arguendo that the deduction in suit falls within subdivision 7. Even so, the deduction must cease when the lease ends, not by the flow of time, but by re-entry. If we were to deduct all the remainder of the commission from the last rent, we should not be making an "exhaustion," or "obsolescence," allowance at all, but allowing a loss, and we should have to find some statutory provision to warrant it. The very notion of a wasting asset presupposes a progressive loss of value extending over a series of taxable years, not a single, catastrophic collapse; that would be a loss. Each may indeed be regarded as a loss; each really is a loss, and the allotment of one to exhaustion and the other to loss proper, is in the end conventional. But that is frequent enough in the interpretation of statutes which are couched for the most part in colloquial speech, and do not embody rigorously logical patterns. As a loss the commission cannot be here deducted because life insurance companies are not allowed losses, any more than they are charged with gains. Midland National Life Ins. Co. v. Com'r, 18 B. T. A. 1240; Jefferson Standard Life Ins. Co. v. Com'r, 25 B. T. A. 1335.

Conceivably a broker's commission may also be regarded as an "expense upon or with respect to the real estate owned by the company" under subdivision 6, though strictly it is not quite that, but a payment for securing a promise from the lessee to pay rents. However, we will assume arguendo that it is within subdivision 6, for the result is the same. An expense is normally deductible in the year when it is paid, like taxes and the other usual outlays made in handling real property; it is difficult for us to find any basis in the statute for amortizing such an item at all. If however we pass that, on the ground that if so treated, the income will be better "reflected," and that for this reason the statute implicitly allows it, nevertheless the same difficulty arises as though we were to amortize it out of the rents regarded as a wasting asset. When the lease ends, it is impossible to spread the unamortized installments retroactively over the past years, and there is certainly no warrant for accelerating them all as an expense for the last year. If

---

[1] "Sec. 203. (a) In the case of a life insurance company the term 'net income' means the gross income less— * * *

"(6) Taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company. * * *

"(7) A reasonable allowance for the exhaustion, wear and tear of property, including a reasonable allowance for obsolescence."

they are to be allowed at all in that year it must therefore be as a loss involved with the loss of the future rents. Thus on either view it appears to us that the commissions were not deductible in 1928.

Order reversed.