## LEE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7559.

Circuit Court of Appeals, Seventh Circuit.

May 3, 1941.

John H. S. Lee, of Chicago, Ill., for petitioner.

Hubert L. Will, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen., for respondent.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals, entered October 9, 1940, determining a deficiency in petitioner's income tax for the year 1936.

Petitioner, a practicing lawyer of the City of Chicago between the years 1927 and 1931, rendered legal services on behalf of one Erna Brand Zeddies in connection with a suit brought by the Lake Shore Country Club, lessee of certain lands, owned by Mrs. Zeddies. On January 28, 1931, Mrs. Zeddies, in payment of such services, gave petitioner her bearer note for $40,000 to mature October 1, 1934, with six per cent interest coupon notes payable semi-annually. As security for the principal and coupon notes, a trust deed was executed in favor of petitioner, in which the Chicago Title and Trust Company was named as trustee, upon her undivided one-third interest in 76 acres of land, then under lease to the Lake Shore Country Club. Interest for the first six months, in the amount of $1,200, was paid in 1931. Nothing was paid upon the indebtedness between that time and 1936, when there was owing the principal of $40,000, and some $8,820 in interest.

Early in 1936, petitioner filed a bill to foreclose the mortgage securing such indebtedness, and in November, 1936, entered into negotiations with counsel for Mrs. Zeddies looking toward the payment of the notes. On November 25, 1936, a meeting was held at the First National Bank of Chicago, attended by Mrs. Zeddies; her counsel, Ernest Schein; petitioner, a representative of the bank, and counsel for the Lake Shore Country Club. As a result of this conference, $44,000 was paid to the petitioner, $40,000 of which was by the bank's check, and $4,000 by draft payable to Mrs. Zeddies and endorsed by her. Petitioner subsequently executed a release of the mortgage and au-

thorized his attorney to dismiss the foreclosure proceedings. The costs of such proceeding, in the amount of $650.95, were paid by petitioner.

In 1931, the year in which petitioner received Mrs. Zeddies' note, he reported in gross income $16,000, his determination of the then fair market value of the note, which was treated by him as a capital asset. In his income tax return for 1936, petitioner included in gross income only $4,000 of the $44,000 received by him. He allocated $40,000 to the receipt of principal on the sale of a capital asset and reported as a capital gain $9,339.62, representing forty per cent of $23,349.05. [1]

Respondent, in determining the deficiency, allowed the deductions of $16,000, the amount reported in 1931, and $650.95, the amount of costs paid by petitioner in the foreclosure proceeding, but rejected petitioner's contention that the transaction represented a sale of a capital asset. Petitioner's contention was likewise denied by the Board.

The sole question thus presented is whether the notes held by the petitioner were paid by, or on behalf of, the maker, so as to constitute ordinary income to the petitioner, or whether the payment was received by petitioner as a result of a sale or exchange of a capital asset within the meaning of Section 117 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 873.

■ The Board, in referring to the conference at which petitioner received payment for the notes in question, found: "At the conference $44,000 was paid to petitioner on behalf of Erna Zeddies, $40,000 on the note in that amount, and $4,000 as settlement of accrued interest." That finding, as we view the matter, is determinative of the controversy if substantially supported. There is no occasion to cite authorities in support of the well-known rule, that this finding is conclusive if supported by substantial evidence.

■ Petitioner contends that the transaction at the bank on November 25, 1936, was not with Mrs. Zeddies or on her behalf, but that it was with the bank or some other interested party, the identity of whom he is not certain. Consistent with such argument, it is claimed that the payment was not received from Mrs. Zeddies or on her behalf and, therefore, the indebtedness

was not extinguished, but that the transaction was a sale or exchange of a capital asset to the bank or, at any rate, to some person other than Mrs. Zeddies. It would serve no useful purpose to relate in detail the evidence. We have read it and find the record somewhat confusing, occasioned, no doubt, by the fact that petitioner was both his own counsel and witness. While there is evidence which affords some support to petitioner's contention, there is also evidence which supports the finding of the Board—in fact, we are convinced that the Board could not reasonably have determined the situation other than it did.

Prior to the meeting of November 25, 1936, petitioner had offered to sell the note to Mrs. Zeddies for $44,000. At the conference he stated to counsel for Mrs. Zeddies: "But if she wants to get this note for less than the amount due, she wants to pursue any other course, I will sell it to her, because I have handled it continuously as a capital asset." Petitioner admits that his purpose was to label the transaction a sale or exchange of property so as to reduce his income tax. No doubt petitioner had a legal right to do so, but whether his effort is to be crowned with success is another matter.

We are convinced that petitioner did what he intended to do, but that the legal result of his action was not what he anticipated. We do not intend to imply that petitioner intentionally committed an illegal act—the record is convincing to the contrary. It is plainly disclosed, however, that what he intended to do and what he thought he had done was to effect a sale to Mrs. Zeddies. In the first place he consulted an experienced Revenue attorney who advised him that he could make such sale. Subsequently, both before and at the conference at the bank, he offered to make the sale to her. In his petition filed with the Commissioner March 24, 1939, for a redetermination of the deficiency, it was alleged: "Finally in 1936, your petitioner offered to sell the note and mortgage and finally did sell the note and mortgage to the maker of the note for the sum of $44,000 cash." It is difficult and, we think, impossible, to reconcile this position with that later advanced, that is, that the transaction by which petitioner received payment for the notes was with some person other than Mrs. Zeddies.

■ Petitioner now contends that the bank was acting as escrow agent for Mrs.

---

[1] It is not necessary to relate the process employed in arriving at these figures as they are not in dispute.

Zeddies and some other party, presumably the Lake Shore Country Club, and that the bank, acting in such capacity, purchased the notes and mortgage. This theory is more fanciful than real. In fact, petitioner admits that the first time he heard of an escrow arrangement was at the hearing of this matter before the Board. The record is convincing that all of the parties at the bank conference, including petitioner, understood the transaction, by which petitioner received payment for his notes, was on behalf of Mrs. Zeddies. While the transaction was labeled as a sale by petitioner, and intended as such, the legal effect was to the contrary. It is well settled that where a note is paid by or on behalf of the maker in satisfaction of the maker's liability thereon, a sale or exchange of property, as those words are used in the pertinent provision of the Revenue Act, does not result. Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819, 821; Bingham v. Commissioner, 2 Cir., 105 F.2d 971, 972.

The decision of the Board of Tax Appeals is affirmed.