# HAYNES v. UNITED STATES.
## No. 45724.

Court of Claims.
June 7, 1943.

240

W. W. Spalding, of Washington, D. C. (S. L. Herold and Pike Hall, both of Shreveport, La., on the brief), for plaintiff.

Daniel F. Hickey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

On April 17, 1936, plaintiff sold his 567½ shares of the stock of the Haynes Production Company to the Standard Oil Company of Louisiana. On the same day all the other stockholders in the Haynes Co. also sold their shares, to Standard, the total number of all the shares, including plaintiff's being 1,750. For all the shares, Standard paid in cash $3,663,141.04, which was divided ratably among the sellers, and promised to pay $10,000,000 more, in monthly deferred payments but only to the extent of the value of three-sixteenths of seven-eighths of the oil and gas produced from the properties of the Haynes Production Company. When the properties had ceased to produce, the $10,000,000 was to be regarded as having been paid.

In 1936 plaintiff received his pro rata share of the lump sum payment of cash, and in addition, monthly payments amounting in all to $142,432.94 under the deferred payment promise of Standard. In 1937 plaintiff received monthly deferred payments totaling $149,753.27. In making his income tax return for 1936 plaintiff treated the cash payment and the monthly deferred payments received by him that year as consideration paid him for the conveyance of a capital asset, the shares in the Haynes Production Co., held by him for more than five years; and treated the profit on the transaction as being, therefore, not fully taxable but only taxable to the extent of 40%.[1] In his 1937 return he treated the monthly deferred payments received by him during that year, in the same way.

The Commissioner of Internal Revenue, however, assessed a tax on plaintiff on the basis that all of these deferred monthly payments should be regarded as current income of plaintiff, and not as a part of the sale price of a capital asset. He therefore treated the full amount of the monthly payments as income, rather than only 40% of them, but allowed plaintiff a deduction for depletion, at the usual rate applicable to oil and gas properties, and taxed plaintiff accordingly. Plaintiff paid the taxes as assessed and filed claims for refund. He sues here to recover the alleged overpayment.

The Government concedes that the transfer by plaintiff of his stock was a sale of a capital asset; that the cash payment received by plaintiff was a part of the consideration for the sale, and that the arrangement for further payments was a further consideration for the sale. It contends that the value, on April 17, 1936, of the conditional promise for the deferred payments should have been capitalized and added to the cash payment, and if the sum amounted to more than plaintiff had paid for the stock, 40% of that excess should have been taxed to plaintiff as a capital gain. Plaintiff was not assessed on that basis. But, the Government contends, even if he had been, his monthly payments received under the promise of the purchaser to make deferred payments would have been taxable as current income, as the Commissioner in fact taxed them.

The stated basis for the Government's position is that plaintiff, when he sold his stock received cash and an interest in oil and gas properties to the extent of three-sixteenths of seven-eighths of their production, until they had produced plaintiff's pro rata share of the $10,000,000; that the value of that interest, at the time plaintiff received it, was a part of the price received by plaintiff for the sale of his capital asset; but that the income which plaintiff later received, as the product of that interest, was current income from an interest owned by plaintiff rather than payment for the stock.

We think that the Government's analysis of the transaction is fallacious. In the first place, plaintiff was given no interest in the oil and gas producing property or in any other property, within any legal meaning of the word interest. He became

---

[1] Section 117 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 873.

a mere general creditor of the Standard Company, the amount of his claim to be measured by the production of certain properties in which he had no ownership nor lien. Plaintiff's "interest" in the production properties was the human interest which one has in his debtor's sources of income from which to pay the debt, sharpened by the conditional nature of the promise to pay, which was to be satisfied not only by payment, but also by the failure of the properties to produce further oil and gas. But plaintiff owned nothing as the proceeds of the sale except the cash received and the Standard Company's promise. See Helvering v. O'Donnell, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903.

Even if plaintiff had been given a lien upon the property, or upon the proceeds of the production, to secure the payment of the promised money, still the payments received in discharge of the promise would have been payments made for plaintiff's capital asset, the stock, rather than current income. The payments would not have been the product of the lien, but rather the agreed consideration for the sale, secured by the lien.

The question of how to treat, for income tax purposes, persons who stand in various economic relations to oil and gas producing properties, has been much litigated. Many of the cases reaching the Supreme Court have involved the depletion problem, whether the taxpayer stood in such a relation to the property as. to be entitled to claim a depletion allowance. The cases are cited and many of them summarized in the opinion of the court in Anderson v. Helvering, 310 U.S. 404, 60 S. Ct. 952, 954, 84 L.Ed. 1277. The court there said "It is settled that the same basic issue determines both to whom income derived from the production of oil and gas is taxable and to whom a deduction for depletion is allowable. That issue is, who has a capital investment in the oil and gas in place and what is the extent of his interest."

Even with the aid of this generalization, the solution of particular cases is not easy. In Thomas v. Perkins, 301 U.S. 655, 57 S. Ct. 911, 912, 81 L.Ed. 1324, Hammonds and Branson, owners of oil and gas leases, assigned "all our rights, title, and interest in and to said leases and rights thereunder" to Perkins, the instrument of assignment providing that it was made in consideration of a cash payment, and of the further

sum of $395,000 to be paid out of one-fourth of the oil produced from the leases "which payments shall be made by the pipe line company or other purchaser of said oil." It further provided that the $395,000 was payable only out of the oil produced, and was not to be a personal obligation of Perkins. The instrument did not purport to reserve a lien. Perkins, the assignee, drilled producing wells on the leases. The pipe line companies which purchased the oil required division orders to be made showing the shares of all parties in the oil, and they paid Hammonds and Branson, the assignors, directly for their one-fourth share.

The Commissioner of Internal Revenue taxed Perkins, the assignee, upon the whole income from the leases, including the money paid to the assignors by the purchasers of the oil. The Supreme Court held that this was wrong. It held that, in spite of the unqualified language of the assignment, the instrument as a whole, including the lack of any personal obligation to pay the money, or the taking of any security for its payment, and the conduct of the parties with reference to the division orders, showed that the assignors "intended to withhold from the operation of the grant one-fourth of the oil to be produced and saved up to an amount sufficient when sold to yield $395,000." The payments made to the assignors, Hammonds and Branson, should therefore have been taxed to them, and were not taxable to Perkins, the assignee.

In our case, as in the Perkins case, the sale by plaintiff and the other stockholders to Standard was on its face unqualified, there was no personal obligation upon Standard to pay the $10,000,000 except as the wells produced oil enough to pay it, and there was no lien or other security reserved or taken by plaintiff. In the Perkins case, in the presence of these same factors, the court was at pains to spell out a reservation of ownership by the assignors in the one-fourth of the oil, the sale price of which the assignors were to receive. Thus the assignors were given a property interest in the leases, and the assignee was exempted from taxation upon the proceeds of that interest.

While in our case plaintiff had exactly the same kind of financial interest in the oil leases and their production that the assignors had in the Perkins case, yet it is not possible in our case to call that interest

an ownership. Plaintiff could not have, technically, reserved by implication an interest in the leases and their production, for he had never owned them. To be sure, he and the other stockholders had owned the Haynes Production Company, which had owned the leases. But even if we were to treat the corporate organization as only a fiction, we think there is no indication of any intent here that plaintiff and the other sellers of the stock were to keep, or get, any property interest in the leases or wells after the sale of the stock to Standard. The financial dependability of Standard probably made them willing to become its unsecured creditors for so much money. In any event, we think that was their position and that, as we said above, the monthly payments were the fulfillment of Standard's promise, rather than the product of property which plaintiff and the other stockholders owned. See Helvering v. O'Donnell, supra; Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897.

The sums received by plaintiff in 1936 and 1937 under the deferred payments provision of the sale to Standard were, therefore, profits on the sale of a capital asset held more than five years, and not income. Plaintiff was overtaxed and may recover the excess with interest. The determination of the amount of plaintiff's judgment may await the filing of a stipulation by the parties. It is so ordered.

WHALEY, Chief Justice, and WHITAKER, Judge, concur.

LITTLETON and JONES, Judges, took no part in the decision of this case.