## UNITED STATES v. YERGER.
### No. 2704.

District Court, E. D. Pennsylvania.

March 23, 1944.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Dist. Atty., both of Philadelphia, Pa., and F. A. Michels, Department Justice, of Washington, D. C., for plaintiff.

Andrew B. Young, David P. Brown, Jr., Leighton P. Stradley, and Stradley, Ronon, Stevens & Young, all of Philadelphia, Pa., for defendant.

WELSH, District Judge.

This action is brought by the United States to recover taxes alleged to have been erroneously refunded. The facts up-

on which the suit is based are set forth in a stipulation of the parties and they are adopted as the findings of the court. Only those essential to indicate the issue need be repeated.

On April 3, 1913, the members of a partnership, which had developed an improved method of preparing type metal, formed a corporation and transferred to it all of the assets of the partnership. In consideration for the transfer the members of the partnership received shares of the corporate stock and the written obligation of the corporation to pay to them a percentage of the profits of the corporation for five years. The interest of one of the partners in such profits was assigned to the defendant, Dorothy D. Yerger. In 1936, 1937 and 1938 the defendant received a share of the corporate profits under the agreement and included the amount thereof as ordinary income in her income tax returns, and paid the tax thereon.

Thereafter, the Commissioner of Internal Revenue determined that the defendant's share of the corporate profits was not ordinary income, but represented part of the consideration paid for capital assets, and that the taxpayer was liable only for the income taxes on the portion of the profits which represented capital gain. A claim was filed for refund of the difference between the tax paid and the tax payable on that portion of such profits which represented taxable capital gain. The claim was allowed and a refund of $6480.99, including interest, was paid to the defendant on August 7, 1940. Since then the Commissioner reversed his position and decided that the profits received by the defendant in 1936, 1937 and 1938 were ordinary income, that the refund was paid in error, and that there is presently due by the defendant the amount of the refund.

There is but one issue involved: Was the defendant's share of the corporate profits ordinary income, and the whole thereof subject to income tax, or was the share of profits paid to the defendant payment on account of the original consideration for the transfer of capital assets and as such only taxable to the extent of the capital gain?

The plaintiff contends that when the partnership assets were transferred to the corporation, the vendors received as the consideration corporate stock and the right to a limited share of the profits for five years; that the transaction was a

closed one in which the right to receive profits could be valued; and that the share of profits thereafter paid constituted the increment of and the earnings derived from that right, and therefore income in the same category as dividends on the corporate shares.

Defendant takes the position that the transfer of the partnership assets was for a total consideration consisting of the corporate shares plus the amount which the partners would receive out of profits earned within the specified period; that the share of the profits received by defendant was part of the consideration for the transfer, and as such, not income except to the extent that it represented capital gain; and that such profits are not income arising out of the intangible right which accrued to the partners at the time of the transfer.

The refund to the defendant appears to have been prompted by the decision rendered in Imperial Type Metal Co. v. Commissioner, by the Board of Tax Appeals, 38 B.T.A. 1531, No. 84272, August 24, 1938, and affirmed by the U. S. Circuit Court for the 3rd Circuit, 106 F.2d 302, 304, a case involving the same company and the same transaction. The issue involved the propriety of deducting as a business expense the shares of profits paid under the agreement to the former partners, the company having claimed such payments as a "royalty bonus". The Board, however, determined that they were payments made in part consideration for the assets acquired by the corporation from the partnership and not deductible as a business expense. In affirming the Board the Court also found that "the language of the agreement leads inevitably to the conclusion that the respective 5% income payments were a part of the price which the petitioner (the corporation) agreed to pay for title to the capital assets, including the secret processes, with which it was to start business. * * *" It was upon that finding that the Commissioner recognized the share of profits as capital payment, and made the refund.

The plaintiff now urges that the Imperial Type Metal Co. case is not controlling because the court did not have before it the question of whether the share of profits was ordinary income or capital gain, but was only called upon to determine whether such payments were items of expense. While plaintiff acknowledges that the case was correctly decided, "a different reason could have been given with the same result"; and we are asked to conclude, in the face of the language used by the Circuit Court, that the payments were in fact a distribution of profit comparable to the payment of a dividend on the outstanding stock, and therefore taxable as ordinary income.

The distinctions suggested and the reasons urged by the plaintiff do not impress us as being logical or sound nor do the authorities cited control the present case. It is well settled that where capital assets are transferred to a corporation in consideration for a price which is to be paid in instalments, or out of profits, or upon a unit basis, such payments are capital in character as distinguished from income. They are not merely the increment or income arising out of a right which has a determinable value at the time of the transaction, but are in the nature of instalments on a price measured by certain contingencies. It has been held that payments of the purchase price fixed by a stated amount per unit were in effect instalment payments (Commissioner v. Hopkinson, 2 Cir., 126 F.2d 406); that annual payments of salary made in consideration for the transfer of stock represented capital payments on account of the purchase price (Brush-Moore Newspapers v. Commissioner, 6 Cir., 95 F.2d 900); and that oil royalties given for capital assets are income only after they exceed the original value of the capital assets. Rocky Mountain Development Co. v. Commissioner, 38 B.T.A. 1303.

The courts have also recognized that where there is a right to receive the consideration for capital assets in instalments, or upon contingencies, the transaction is not a closed one. The promise is in no proper sense equivalent to cash. It has no ascertainable fair market value. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. The right to receive future payments and to recoup the original capital cost was contingent upon future events which might never occur. The right to receive such contingent future payments was not the equivalent of cash because the promise to make future payments had no ascertainable value. The transaction was, therefore, not closed and gain or loss could not be ascertained. Rocky Mountain Development Co. v. Commissioner, supra.

We conclude that the right to receive contingent future payments on account of the purchase price had no ascertainable value at the time of the transaction, that it may not be separated or distinguished from the actual payments subsequently made, and that the defendant's share of the corporate profits were actually payments on the purchase price of capital assets transferred to the corporation in 1913. There can be no doubt that the decision in the Imperial Type Metal Co. case, supra, is controlling and that it properly characterizes the payments of the profits to the defendant as part of the consideration for capital assets as distinguished from ordinary income.

We, therefore, find for the defendant.

See, also, 143 F.2d 58.

Wood, Gresham, McCorquodale & Martin and A. C. Wood, all of Houston, Tex., for Royal Bank of Canada.

Baker, Botts, Andrews & Wharton, J. C. Hutcheson, III, and Tom Martin Davis, all of Houston, Tex., for Wendell H. Marden.

Fulbright, Crooker, Freeman & Bates and James C. Boone, all of Houston, Tex., for trustee in bankruptcy.

A. Milton Vance, of Houston, Tex., for Houston Nat. Bank.

Cooper K. Ragan, of Houston, Tex., for Kirby Petroleum Co.

Edward S. Boyles, of Houston, Tex., for Whitney Nat. Bank of New Orleans, La.

Sterling Myer, Jr., of Houston, Tex., for Merrill Ring Lumber Co., Ltd., McCoy-Wilson, Ltd., and Bloedel, Stuart & Welch, Ltd.

J. A. Platt, of Houston, Tex., for West Securities Co.