## COMMISSIONER OF INTERNAL REVENUE v. CARTER.

### No. 26, Docket 20999.

United States Court of Appeals
Second Circuit.

Nov. 29, 1948.

Theron Lamar Caudle, Asst. Atty. Gen., and Lee A. Jackson and Irving I. Axelrad, Sp. Assts. to Atty. Gen., for petitioner.

John S. Keith, of New York City, for respondent.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents the question whether income received by the taxpayer in 1943 is taxable as long-term capital gain, as the Tax Court ruled, or as ordinary income as the Commissioner contends. The facts are not in dispute. The taxpayer, Mrs. Carter, had owned for ten years all the stock of a corporation which was dissolved on December 31, 1942. Upon its dissolution all of its assets were distributed to her in kind, subject to all its liabilities which she assumed. In the distribution she received property having a fair market value exceeding by about $20,000 the cost basis of her stock, and she reported such excess as a capital gain in her 1942 return and paid the tax thereon. In the corporate liquidation she also received 32 oil brokerage contracts which the parties stipulated had no ascertainable fair market value when distributed. Each contract provided for payment to the corporation of commissions on future deliveries of oil by a named seller to a named buyer. The contracts required no additional services to be performed by the corporation or its distributee, and the future

commissions were conditioned on contingencies which made uncertain the amount and time of payment. In 1943 the taxpayer collected commissions of $34,992.20 under these contracts. She reported this sum as a long-term capital gain; the Commissioner determined it to be ordinary income. The Tax Court held it taxable as capital gain. The correctness of this decision is the sole question presented by the Commissioner's appeal.

Mrs. Carter's stock was a "capital asset" as defined by section 117(a) of the Internal Revenue Code, 26 U.S.C.A. § 117(a). In exchange for her stock, she received the assets of the corporation upon its dissolution. The tax consequences of such a transaction are controlled by section 115(c), 26 U.S.C.A. § 115(c), which provides that "the gain or loss to the distributee resulting from such exchange" shall be determined under section 111, 26 U.S.C.A. § 111, but recognized only to the extent provided in section 112, 26 U.S.C.A. § 112. Turning to section 111(a): the "gain from the sale or other disposition of property" is the excess of "the amount realized therefrom" over the adjusted cost basis provided in section 113 (b), 26 U.S.C.A. § 113(b). Paragraph (b) of section 111 defines the "amount realized from the sale or other disposition of property" to be the sum of money received "plus the fair market value of the property (other than money) received." Paragraph (c) of the same section provides that "In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter, shall be determined under the provisions of section 112." That section lays down the general rule, subject to exceptions not pertinent to the case at bar, that "upon the sale or exchange of property" the entire amount of the gain or loss, determined under section 111, shall be recognized. From the foregoing statutory provisions, it is obvious that if the oil brokerage contracts distributed to the taxpayer had then had a "fair market value," such value would have increased correspondingly the "amount realized" by her in exchange for her stock and would have been taxable as long-term capital gain, not as ordinary

income. Boudreau v. Commissioner of Internal Revenue, 5 Cir., 134 F.2d 360; Fleming v. Commissioner of Internal Revenue, 5 Cir., 153 F.2d 361. The question presented by the present appeal is whether a different result is required when contract obligations having no ascertainable fair market value are distributed in liquidation of a corporation and collections thereunder are made by the distributee in later years.

In answering this question in the negative, the Tax Court relied primarily upon Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. That involved a sale of stock, not a distribution in liquidation, under which the seller received cash and the buyer's promise to make future payments conditioned on contingencies. The cash received did not equal the seller's cost basis for the stock, and the contingencies affecting future payments precluded ascribing a fair market value to the buyer's promise. In later years payments were made which the seller did not return as income. The decision held that she was not required to do so. With respect to such payments, the court said, 283 U.S. at pages 412, 413, 51 S. Ct. at page 552.

"As annual payments on account of extracted ore come in, they can be readily apportioned first as return of capital and later as profit. * * * When the profit, if any, is actually realized, the taxpayer will be required to respond. The consideration for the sale was $2,200,000 in cash and the promise of future money payments wholly contingent upon facts and circumstances not possible to foretell with anything like fair certainty. The promise was in no proper sense equivalent to cash. It had no ascertainable fair market value. The transaction was not a closed one. Respondent might never recoup her capital investment from payments only conditionally promised. * * * She properly demanded the return of her capital investment before assessment of any taxable profit based on conjecture."

The Commissioner argues that the Logan case is inapplicable because there the taxpayer had not recovered the cost basis of her stock while here she had. The Tax Court thought the distinction immaterial. We agree. The Supreme Court spoke of

the annual payments as constituting "profit" after the seller's capital investment should be returned. Until such return it cannot be known whether gain or loss will result from a sale; thereafter it becomes certain that future payments will result in gain. No reason is apparent for taxing them as ordinary income. As this court said in Commissioner of Internal Revenue v. Hopkinson, 2 Cir., 126 F.2d 406, 410, "payments received by the seller after his basis had been extinguished would have been taxable to him as capital gains from the sale of the property," citing Burnet v. Logan as authority.[1]

The Commissioner also urges that the Logan case is distinguishable because it dealt with a sale of stock rather than exchange of stock for assets distributed in a corporate liquidation. This contention is answered by White v. United States, 305 U.S. 281, 288, 59 S.Ct. 179, 83 L.Ed. 172, and Helvering v. Chester N. Weaver Co., 305 U.S. 293, 295, 59 S.Ct. 185, 83 L.Ed. 180, where the court held that the recognition required by section 115(c) of gains and losses on liquidations must for purposes of computation of the tax, be taken to be the same as that accorded to gains and losses on sales of property. Consequently we agree with the Tax Court's ruling that the principle of the Logan case is applicable to a corporate liquidation where stock is exchanged in part for contracts having no ascertainable market value, and that future collections under such contracts are taxable as capital gain in the year when received if the distributee has previously recovered the cost basis for the stock.

The Commissioner's argument that such collections are analogous to the receipt of interest or rent upon bonds or real estate distributed in a corporate liquidation overlooks a significant distinction. Payment of interest or rent does not impair the value of the bond or real estate since each remains as a capital asset regardless of the number of payments. See Helvering v. Manhattan Life Ins. Co., 2 Cir., 71 F.2d 292, 293. But with respect to the oil brokerage contracts, under which no additional services were to be rendered by the payee, each payment decreases their value until, with the final payment it will be completely exhausted; and, if the payments be treated as income, the distributee has no way to recoup his capital investment, since concededly he has no economic interest in the oil producing properties and therefore no right to depletion deductions.[2] Hence to consider the brokerage payments as ordinary income would produce a most unjust result and one quite unlike the result which follows the distribution of bonds or real estate in a corporate liquidation.

For the foregoing reasons we think the decision of the Tax Court correct. It is affirmed.

---

[1] For similar rulings see Haynes v. United States, 50 F.Supp. 238, 100 Ct. Cl. 43; United States v. Yerger, D.C., 55 F.Supp. 521; Hill's Estate v. Maloney, D.C., 58 F.Supp. 164; Nicholson v. Commissioner of Internal Revenue, 3 T.C. 596.

[2] It is true, in the case at bar, the taxpayer had no capital investment in the brokerage contracts because from other assets distributed she had already recovered the cost basis of her stock and the oil brokerage contracts had no ascertainable fair market value. But the Commissioner's analogy argument would be equally applicable if the brokerage contracts had been the only corporate assets distributed and it had been possible to ascribe to them a fair market value of $21,000. In that case, the distributee's capital investment in the brokerage contracts would have been $20,000, the cost basis of her stock being $1,000. She would be entitled to recover her capital investment before she could be charged with receiving either gain or ordinary income, and the only source of recovery would be the payments which would ultimately exhaust the value of the contracts. Hence the answer given above to the analogy argument is apposite.