MACE OSENBACH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29890. Promulgated November 19, 1951.

*James Mullen, Esq.*, for the petitioner.
*Stephen P. Cadden, Esq.*, for the respondent.

800

**OPINION.**

DISNEY, *Judge:* The amounts of income here involved were collections upon various items, loans, discounts, real estate mortgages, securities, life insurance policies, claims, and other items, distributed to the petitioner as a stockholder of Federal Service Bureau, Incorporated, in complete liquidation of that corporation. The liquidation was one of those covered by section 112 (b) (7) of the Internal Revenue Code, in which the petitioner and the other stockholder had filed and required election. The question posed is whether collections upon assets distributed in such a complete liquidation under section 112 (b) (7) constitute ordinary income, as contended by the respondent, or capital gain, as argued by the petitioner. No case directly in point is cited and the question appears to be one of first impression.

The substance of the petitioner's contention is that, as indicated in the Senate Finance Committee Report when section 112 (b) (7)

was placed in the Code by section 120 of the Revenue Act of 1943 (1944 C. B. p. 1009), the effect of section 112 (b) (7) is to postpone the recognition of gain on the liquidation, that the gain that would otherwise be recognized would be capital gain, and that therefore when the collections here involved are made upon assets so distributed without recognition of gain, it follows that the gain is capital gain and not ordinary income. Stating the question otherwise, the petitioner argues that the liquidation without recognition of gain is not a closed transaction, that the liquidation stamps it as capital, and that subsequent realization, through the collections, "measures the gain and gives the cue for tax incidence." The respondent, on the other hand, argues that in order for taxation upon the collections to be at capital gain rates there must be sale or exchange of capital assets and that the collections here involved were not such sale or exchange. He cites *Fairbanks* v. *United States*, 306 U. S. 436; *Lee* v. *Commissioner*, 119 F. 2d 946; *Reis* v. *Commissioner*, 142 F. 2d 900, and other cases to that effect. See also *May D. Hatch*, 14 T. C. 237, reversed on other grounds 190 F. 2d 254. Petitioner makes no attempt to answer these citations and appears to concede, and we consider that he does concede, that ordinarily collections upon such assets as are here involved do not constitute sale or exchange. The respondent contends also that petitioner was engaged in the business of purchasing concerns, to operate for a short time and sell or liquidate, and in handling the transactions here involved was following his regular business so that the income realized was ordinary income.

We first examine the first contention, in substance, that the application of capital gain rates to the income involved requires, what is absent here, a sale or exchange. The petitioner, in effect, argues that the sale or exchange is furnished by the exchange of corporate stock for the assets distributed in liquidation. It is, of course, well settled, in fact by the statute, that such exchange of stock for liquidated assets is an exchange and a capital transaction. Section 115 (c), Internal Revenue Code. Amounts distributed in complete liquidation are treated as in exchange for the stock. If the distribution or liquidation does, as petitioner contends, supply the sale or exchange, which section 117 (a) requires in order that income shall be considered capital gain, his contention should be sustained. This depends upon whether the distribution in liquidation is a closed matter or whether, as the petitioner urges, it is not closed, because of the incidence of section 112 (b) (7), until and including the collections, here involved.

The gist of the petitioner's argument is, as above seen, that the intent of section 112 (b) (7) was to postpone the recognition of gain, therefore of the capital gain involved in the liquidation distribution, and *Commissioner* v. *Carter*, 170 F. 2d 911, and *Westover* v. *Smith*,

173 F. 2d 90, are cited, by analogy, as authorities for the postpone-
ment of recognition of gain on liquidation. It is true that the Senate
Finance Committee Report states (1944 C. B. p. 1009) that the effect
of section 112 (b) (7) is, in general, to postpone recognition of gain
on liquidation, but that committee report seems to us also to be inim-
ical to petitioner's idea that because of such postponement the capital
transaction involved in exchange of stock for distributed assets is
not a closed transaction, for the report also uses the language: "Since
the computation of earnings and profits under this section of the bill
is a final one representing the closure of the account upon the com-
pletion of the liquidation, it seemed appropriate * * * to bring
into account all items of accrued expense or accrued income." It is
to be remembered also that section 112 (b) (7), and the election
therein involved, apply only to a "complete liquidation," within the
phrase of the statute itself, and both committee reports (1944 C. B. pp.
1009, 1063) refer to the statute as involving "complete" liquidations.
These references to completed liquidations and "closure of the account"
appear inconsistent with petitioner's idea that the transaction was not
closed but must be considered open so as to include later collections
upon the distributed assets. *Commissioner* v. *Carter* and *Westover* v.
*Smith, supra,* primarily relied upon by the petitioner, are essentially
based upon the idea that the distributions there were not closed trans-
actions, because assets received in distribution had no ascertainable
value. Applying *Burnet* v. *Logan,* 283 U. S. 404, the courts held that
sums later realized upon such assets of no ascertainable value were
taxable as long term capital gain. In the *Carter* case the sums were
amounts paid upon personal service contracts where the personal
services had been performed, and in the *Westover* case the amounts
later received were royalty payments under a contract. The conclu-
sions, in both cases, that the payments later received were taxable
as capital gain depend altogether upon the fact that the contracts
had no ascertainable value. Thus, in the *Carter* case the court points
out that if the contracts distributed had then had fair market value,
such value would have increased the amount realized in exchange
for the stock and would have been taxable as long term capital gain,
and says that the question presented is whether a different result is
required when obligations having no ascertainable fair market value
are distributed in liquidation and collections are made in later years.
Relying on *Burnet* v. *Logan* the court concludes that the transaction
was not a closed one. The court distinguishes a situation where
interest is paid on bonds or rent is paid upon real estate, received
in distribution. In the *Westover* case the court says "Doubtless the
value of the contract would be computed as a capital gain were it
found to have an ascertainable market value" at the time of liquida-
tion. The taxpayer had insisted "that the transaction remains open

until all payments are completed." The court pointed out that the payments rose directly out of the contract, considered them amounts distributed, that the contract itself was a distribution, and that its value need not be measured immediately but could be measured as payments were received. Thus, it is apparent that the unascertainability of value at time of distribution was the element in both cases which prevented the distribution from being considered a closed matter; and that neither case involved a distribution under section 112 (b) (7) with election as to recognition of gain. In this case there is no contention that the assets distributed had no ascertainable value, and in the face of the language of statute and committee reports we see no reason to consider the transaction as other than closed. We think the petitioner desires too much effect from the general idea of postponement of recognition of gain involved in the statute when he seeks therefrom to establish that any amounts received by way of collections upon the assets distributed must be taxed at capital gain rates simply because, as is of course true (*Helvering* v. *Weaver Co.*, 305 U. S. 293), the exchange of stock for distributed assets in the liquidation was a capital transaction. That transaction, unless values were unknown, then and there established a definite closure of the amount of profit to the taxpayer—which indicates clearly why, in the *Carter* and *Westover* cases of unascertainable values there could be no such closure and the transaction was left open. Section 112 (b) (7) when analyzed is found simply to provide that in case of a complete liquidation, complete within one month in 1944, a shareholder electing may have his gain upon the shares recognized only to the extent provided in subparagraph (E) (so far as here involved) and subparagraph (E) merely provides that there shall be recognized and taxed as a dividend certain amounts of earnings and profits and recognized and taxed as short or long term capital gain certain other amounts, leaving any remaining gain unrecognized. Nothing is said about future taxation thereof. In addition, section 113 (a) (18) was amended by section 120 of the Revenue Act of 1943 and covers particularly the basis of property received under a liquidation with election exercised and recognition of gain affected, under section 112 (b) (7). In short, section 112 (b) (7) says nothing as to future taxation or basis and section 113 provides a basis for the future for the distributed property. There appears then not only an absence of anything in section 112 (b) (7) to assure the distributee that he may treat with the distributed property at all times expecting taxation upon capital gain rates (even though he does not sell or exchange), but it also appears that sections 112 (b) (7) and 113 merely omit from recognition a limited amount of the gain upon shares of stock upon liquidation and provide therefore a new basis accordingly. Such basis, of course, can be deducted if and when the

property is sold, or exchanged, and capital gain rates apply; but we find nothing in the two sections involved, or in the general idea of postponement of recognition, to negative the thought that the property may not be sold or exchanged and in that case we see nothing in section 112 (b) (7) to require application of capital gain rates, nor in that section do we discern any reason why the property, though it has a certain basis, may not be disposed of in such a manner as to prevent application of capital gain rates, notably, disposed of as stock in trade of the taxpayer or property of a kind properly includible in the taxpayer's inventory if on hand at the close of the year or held primarily for sale to customers in the ordinary course of trade or business. In such cases the property would not be capital assets under section 117 (a) (1) and sale thereof would not cause application of capital gain rates. But even assuming that the property retains character as capital assets it must in order for capital gain rates to apply be sold or exchanged within section 117 (a). There was no sale or exchange here. Seeing nothing to prevent a taxpayer from so dealing with property, received by him in the liquidation comprehended in section 112 (b) (7) in a manner other than sale or exchange thereof we are unable to agree with the petitioner's view that capital gain rates necessarily apply because of liquidation under that section. In this connection we note that the stipulated facts inform us of the amount of collections, the cost of the items upon which collections were made, and the net amount realized. A portion of the $12,034.45 collected may have been interest, such as discussed and distinguished in the *Carter* case, *supra*, with citation of *Helvering* v. *Manhattan Life Insurance Co.*, 71 F. 2d 292. In such event, the amounts thereof would not appear to partake of the character of capital receipts. In any event, we conclude and hold, after much examination of this novel question as to the effect of a distribution under section 112 (b) (7), that the later collections here involved upon the distributed properties were not subject to taxation at capital gain rates but were ordinary income.

This conclusion makes it unnecessary for us also to consider the respondent's contention that the amounts received were ordinary income because the petitioner received them in the course of his regular business, that of a promoter seeking businesses to purchase, to operate for a short time, or sell, or liquidate.

Reviewed by the Court.

*Decision will be entered for the respondent.*

VAN FOSSAN, *J.*, concurs in the result.

---

TURNER, *J.*, concurring: While I concur in the result reached in the instant case and the reasons given therefor, I do not agree that this

case is distinguishable from *Commissioner* v. *Carter*, 170 F. 2d 911, and *Westover* v. *Smith*, 173 F. 2d 90. The differences between those cases and the instant case pointed to in the majority opinion do exist, but they are not, in my opinion, distinguishing differences. In other words, I think those cases were incorrectly decided.

To say that an exchange of corporate stock for assets in kind in a corporate liquidation is a closed transaction with respect to such assets as have a fair market value at the time of liquidation, but is not a closed transaction with respect to assets which at the time of liquidation do not have a fair market value, is, it seems to me, wholly artificial. The transaction is a closed and completed transaction in each instance. The erstwhile stockholder of the corporation, in each instance, has finally and completely disposed of his stock, has received assets of the corporation in full and complete satisfaction therefor, and there is thereafter no obligation on the part of any one to pay or transfer to him anything further in payment or exchange for his stock. The transaction is just as much a closed transaction as if he had paid cash in full for the property, instead of stock.

*Burnet* v. *Logan*, 283 U. S. 404, is an entirely different case. There the taxpayer had sold stock in a corporation, receiving a part of the selling price in cash at the time the transaction was entered into and leaving the remainder of the selling price to be paid over a period of time, such remainder to be measured by the results from the operation of certain ore properties which belonged to the corporation the stock of which was sold. Unlike this case, the transaction there had not been completed; a part of the consideration for the stock remained to be paid.

Undoubtedly a major factor contributing to the erroneous decisions in the *Carter* and *Westover* cases was the long-standing and still continued loose practice of referring to transactions falling within the provisions of section 112 (b) of the Code as transactions in which the recognition of the gain therefrom is postponed. Section 112 is limited in its application to realized gains and losses and contains no provision for a later or postponed recognition of gain. The gain is either recognized under section 112 (a), or, under section 112 (b), is not recognized. Whether or not the recipient of property in an exchange described in section 112 (b) is ever taxable on gain on or from the property so acquired does not depend upon any subsequent recognition of gain already realized or on any subsequent realization of gain on the stock given in exchange for such property, the latter obviously being impossible, since the said stock has already been finally and completely disposed of and the full consideration therefor received, but, instead, depends on and results from some wholly independent and different disposition of or realization on the property in question, and that, without regard to whether the property did or did not have

a fair market value when acquired in exchange for the stock. And further, whether the subsequent gain, when so realized, is capital gain or ordinary income, must be determined from the nature and character of the subsequent gain-realizing transaction, and not on the nature of the prior transaction whereby the property then disposed of was acquired.