Birt E. Slater and Eleanor Slater v. Commissioner.
Slater v. Commissioner
Docket No. 81042.
United States Tax Court
T.C. Memo 1964-169; 1964 Tax Ct. Memo LEXIS 166; 23 T.C.M. (CCH) 1000; T.C.M. (RIA) 64169; June 19, 1964
Sanford M. Stoddard, Continental Bk. Bldg., Salt Lake City, Utah, and Dale E. Anderson, for the petitioners. James Booher, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows: 1954
$986.47
1955
804.68
1956
762.88
*167 The sole issue presented for our decision is the correctness of the respondent's action in determining that certain royalty payments made to petitioner during the years in issue under an exclusive license agreement are taxable to him as ordinary income. Findings of Fact A portion of the facts have been stipulated and are found as stipulated. Petitioners are husband and wife residing at Santa Ana, California. They filed their joint income tax returns for 1954 and 1955 with the director at Salt Lake City, Utah. They filed a joint return for 1956 with the director at Helena, Montana. Petitioner Birt E. Slater is hereinafter referred to as petitioner. On June 13, 1952, and March 3, 1953, Samuel M. Bennett was issued patents on a toilet flush tank valve, sometimes hereinafter referred to as the "float valve." On June 17, 1952, petitioner, together with N. J. Thompson and Alan C. Stephenson, organized a corporation named Good, Inc., sometimes hereinafter referred to as the corporation, under the laws of Colorado. Upon incorporation, Good, Inc., issued three shares of stock, one to each of its abovenamed organizers. Petitioner paid $1,300 to Good, Inc., for the issuance of his *168 share of its stock. On July 18, 1952, Good, Inc., entered into an agreement with Samuel M. Bennett under which the corporation was granted the exclusive right to manufacture, use, and sell the float valve throughout the United States and Canada. As consideration, Samuel M. Bennett was paid $1,000, $250 at the time of the execution of the license agreement, and the balance in three equal quarterly installments beginning October 15, 1952. In addition, the license agreement provided that Bennett was to receive a royalty of 5 cents for each float valve sold by Good, Inc., with a minimum royalty of $5,000 per year commencing July 1, 1953. The agreement also granted Good, Inc., the right to assign the agreement to others or to sublicense the right to make, use, and sell the float value. After exploring the possibility of manufacturing the float valve, the officers of Good, Inc., decided to investigate the possibility of finding an established manufacturer who would be interested in producing and marketing the valve. On June 30, 1953, Good, Inc., entered into an agreement with Lavelle Rubber Company of Chicago, Illinois, under which Lavelle was granted the exclusive rights to manufacture, *169 use, and sell the float valve throughout the United States and Canada. As consideration, Levelle agreed to pay the corporation for the life of the patent a minimum royalty of $10,000 per year or 10 cents per unit sold, whichever was greater. The royalty was payable monthly in an amount not less than $416.67 per month to Good, Inc., and $416.67 per month to Samuel M. Bennett. Under this agreement Lavelle Rubber Company had the option of terminating the contract upon giving 90 days' notice to Good, Inc. During 1952, Good, Inc., received no income and filed no income tax return. During 1953, the corporation received only the guaranteed minimum royalty payments from Lavelle Rubber Company for 6 months or a total gross income of $2,500.02. On November 30, 1953, the three shareholders of Good, Inc., adopted a plan of complete liquidation pursuant to which all of its property was to be distributed to its shareholders within the month of December 1953, in complete cancellation or redemption of all its outstanding stock. This liquidation was intended by the shareholders of the corporation to comply with the provisions of section 112(b)(7) of the Internal Revenue Code of 1939. Petitioner, *170 as a qualified electing shareholder, filed the election prescribed by section 112(b)(7)(D) of the 1939 Code within 30 days of adoption of the plan of liquidation. During December 1953, Good, Inc., distributed all of its assets in complete liquidation, consisting of cash, the license agreement with Samuel M. Bennett, and the license agreement with Lavelle Rubber Company. Upon the liquidation of Good, Inc., petitioner received $500 in cash and an undivided one-third interest in the above-mentioned license agreements. On their income tax return for 1953, petitioners valued their one-third interest in the Lavelle Rubber Company contract at $416.67. As a result petitioners reported total distributions from Good, Inc., in the amount of $916.67, which when subtracted from the basis of petitioner's stock in the amount of $1,300 disclosed a loss on liquidation of $383.33. Inasmuch as petitioner had elected to comply with the 1-month liquidation provisions of section 112(b)(7) of the 1939 Code, this loss was not recognized on the 1953 income tax return. During 1954, 1955, and 1956, petitioner received $5,805.66, $4,733.41, and $5,621.38, respectively, from Lavelle Rubber Company as royalty *171 payments under the patent license agreement. On their income tax returns for each of those years, petitioners reported the above-listed amounts as long-term capital gain. The respondent has determined that petitioner received royalty payments in the amounts of $5,805.66, $4,733.41, and $5,621.38 as ordinary income for 1954, 1955, and 1956, respectively. Ultimate Findings The license agreement executed by Good, Inc., with Lavelle Rubber Company had an ascertainable fair market value as of December 29, 1953. Petitioner's undivided one-third interest in the license agreement as of that date had a fair market value of not less than $416.67. Opinion Petitioners claim that the royalty payments received by them during 1954, 1955, and 1956 from Lavelle Rubber Company are properly taxable as long-term capital gain. It is petitioner's contention that, by virtue of the operation of section 112(b)(7) of the 1939 Code, Birt E. Slater, as a stockholder in Good, Inc., became a successor in interest to that corporation and stepped into its tax shoes so that the royalties received under the exclusive license agreement which the corporation executed with Lavelle Rubber Company retained their *172 character as capital gain in his hands following the liquidating distribution during December 1953. He further contends that this license agreement had no ascertainable fair market value at the time of its distribution to him by Good, Inc. Respondent maintains that section 112(b)(7) is inapplicable to the liquidation of Good, Inc., during December 1953 and that the license agreement with Lavelle Rubber Company had an ascertainable fair market value at the time of its distribution to petitioner. Petitioner's first argument is premised upon the assumption that the elective provisions of section 112(b)(7) of the 1939 Code [1] which provide for the partial nonrecognition of gain realized upon a liquidating distribution qualifying under the terms of that section are here applicable. Section 112(b)(7), in contradistinction to other nonrecognition provisions of the 1939 Code, [2] provides only for the possible nonrecognition of gain resulting from a qualifying liquidation thereunder but makes no provision for the nonrecognition of losses realized by shareholders upon liquidation. Accordingly the respondent's regulations deny the applicability of section 112(b)(7) in situations where liquidating *173 losses occur: REGS. 118. Sec. 39.112(b)(7)-2 Qualified electing shareholder. * * * * * *
(d) An election to be governed by the provisions of section 112(b)(7) relates to the treatment *174 of gain realized upon the cancellation or redemption of stock upon liquidation and can therefore be made only by or on behalf of the person by whom gains, if any, will be realized. Thus, the shareholder who may make such election must be the actual owner of stock and not a mere record holder, such as a nominee. * * *
Sec. 39.112(b)(7)-4 Treatment of gain - (a) Computation of gain. As in the case of shareholders generally, for the purpose of computing gain, amounts received by qualified electing shareholders are treated as in full payment in exchange for their stock, as provided in section 115(c), and gain from the receipt of such amounts is determined as provided in section 111. Gain or loss must be computed separately on each share of stock owned by a qualified electing shareholder at the time of the adoption of the plan of liquidation. The limited recognition and special treatment accorded by section 112(b)(7) applies only to the gain on such shares of stock upon which gain was realized and not to net gain computed by setting off losses realized on some shares against gain on others. Since petitioner has disclosed the realization of a loss in the amount of $383.33 resulting *175 from the liquidation of Good, Inc., section 112(b)(7) cannot apply and the loss so reported must be recognized at the time of distribution under section 115(c) of the 1939 Code as a capital loss. Under our decision in John W. Chamberlin, 32 T.C. 1098, affd. 286 F. 2d 850, certiorari denied 368 U.S. 820, if a patent license agreement has an ascertainable fair market value at the time of its distribution by a corporation to its shareholder, the royalty payments subsequently collected from the licensee must be treated as ordinary income. Although petitioner contends that the license agreement executed by Good, Inc., and Lavelle Rubber Company had no ascertainable fair market value on December 29, 1953, we are unable to agree that the record before us so indicates. The expert testimony introduced at the trial discloses that it is possible for a qualified appraiser to ascertain the fair market value of a patent prior to production provided he is furnished with the necessary information, such as a market survey showing the potential sales, the cost of engineering, the cost of production, the risks involved, the strength of the particular distributor *176 marketing the product, and data concerning competitive conditions and products currently being marketed by competing distributors. Because of the lack of available information (such as the lack of a market survey), the experts who testified at the trial were unable to ascertain the value of the license agreement with Lavelle Rubber Company covering the Samuel M. Bennett patent on the float valve. However, it is abundantly clear from the testimony of these expert witnesses that it is a common business practice to evaluate such patents prior to production on the basis of a complete market survey and other pertinent information. Consequently we must conclude from the record here presented that the license agreement in question which was distributed by Good, Inc., to petitioner in December 1953 had an ascertainable fair market value at the time of its distribution. The respondent concedes on brief that petitioner is entitled to first recover from the collected royalty payments his basis in the distributed license agreement with Lavelle Rubber Company. The petitioner's basis therein is the fair market value of the license agreement at the time of distribution to him. Secs. 111 and 113(a), *177 I.R.C. 1939; sec. 39.115(c), Regs. 118. On his income tax return for 1953 petitioner valued his one-third interest in the license agreement at $416.67 and the respondent concedes that this figure represents his adjusted basis in the agreement. In the absence of proof that the fair market value of the license agreement is greater than $416.67, we accept that figure as the correct fair market value. We therefore hold that to the extent the royalty payments received by petitioner during the years in issue exceed his basis in the license agreement they represent ordinary income to him and are taxable as such for those years. John W. Chamberlin, supra; Don O. Scott, 26 T.C. 869; cf. Osenbach v. Commissioner, 198 F. 2d 235, affirming 17 T.C. 797. Decision will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN ORLOSS. * * *
(b) Exchanges Solely in Kind. - * * *
(7) Election as to Recognition of Gain in Certain Corporate Liquidations. - (A) General Rule. - In the case of property distributed in complete liquidation of a domestic corporation, if - (i) the liquidation is made in pursuance of a plan of liquidation adopted after December 31, 1950, whether the taxable year of the corporation began on, before, or after, January 1, 1951; and (ii) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within some one calendar month in 1951, 1952, or 1953 - then in the case of each qualified electing shareholder (as defined in subparagraph (C)) gain upon the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subparagraphs (E) and (F). ↩
2. See sec. 112(b)(1), (2), (3), (4), (5), and (6)↩.