Victor B. Gilbert, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Joseph E. Gilbert, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 3746, 5866. Promulgated January 9, 1946.

*Daniel Katz, Esq.*, for the petitioners.
*Bernard J. Long, Esq.*, for the respondent.

### OPINION.

Disney, *Judge*: These cases, duly consolidated, involve income taxes. Deficiencies were determined by the Commissioner in Docket No. 5866, Joseph E. Gilbert, petitioner, in the amounts of $6,552.90, $6,097.93, and $13,921.06, for the calendar years 1938, 1939, and 1940, respectively. An amended answer filed by the Commissioner asks that such deficiencies be increased by $33,415.89, $32,254.33, and $43,916.63, respectively, for the years involved. In Docket No. 3746, Victor B. Gilbert, petitioner, involving the calendar year 1940, deficiency was determined in the amount of $439.25. No increase of deficiency is asked in that case. The principal question involved in both cases is whether certain amounts received are taxable in their entirety as ordinary income, or only in part, as capital gain.

A stipulation of facts was filed, and certain income tax returns and a report thereon were introduced. We find the facts as stipulated. So far as material, they may be summarized as follows:

The petitioners are individuals and filed their income tax returns for the taxable years with the collector for the third district of New York

In 1927 Joseph E. Gilbert owned certain property in the city of New York in which he had a cost basis of $4,100,000, and in that year he sold the property for a price of $4,750,000. The purchase price, however, was represented by $2,100,000 first mortgage to which the purchaser took subject, $1,000,000 in cash, and two bonds and two mortgages totaling $1,650,000, but at that date having a fair market value of $1,000,000. Joseph E. Gilbert therefore received for his property exactly the amount of his base, $4,100,000. He held, however, the two notes and mortgages with a total face value of $1,650,000. Later

in 1930 and 1932 he assigned to petitioner Victor B. Gilbert a $202,500 face value interest in the two notes and mortgages and assigned to other persons participating interests therein to the extent of $337,500 face value, leaving in himself an interest of the face value of $1,110,000. That interest, however, had a cost basis of $672,800; and petitioner Victor B. Gilbert's cost basis in the $202,500 interest conveyed to him was $122,700.

The obligor on the two notes and mortgages made the following payments to Joseph E. Gilbert: $800,000 in 1933, $100,000 in 1938, $100,000 in 1939, and $110,000 in 1940, the last payment being in full satisfaction of Joseph E. Gilbert's participating interest. The obligor also paid petitioner Victor B. Gilbert $9,375 in partial satisfaction of his participating interest.

The two bonds and mortgages upon which the above payments were made were at all times pertinent entered, noted, and carried in the books, records, and accounts of the obligor corporation, and both mortgages were, on September 29, 1927, recorded in the office of the Register of the County of New York, State of New York.

Petitioner Joseph E. Gilbert, for the year 1933 and for the taxable years here involved, treated a pro rata portion of the amounts received by him as recovery of cost and reported the remainder of the amounts received as long term capital gain. For the year 1940 petitioner Victor B. Gilbert did the same.

Petitioner Joseph E. Gilbert, in his income tax returns for the year 1933 and for the taxable years, reported income taxable as long term capital gain as follows: In 1933, $315,151.52; in 1938, $39,370.58; in 1939, $39,370.44; and in 1940, $43,307.46. For the year 1940 petitioner Victor B. Gilbert reported as long term capital gain $3,694.50.

In addition to the stipulated facts above epitomized, we further find that petitioner Joseph E. Gilbert's treatment in his income tax return of the amounts received by him in 1933 was not questioned by the Commissioner.

The petitioners, as indicated by their returns, contend that the amounts above indicated were properly returned by them as long term capital gain. They base their contention upon section 117 (f) of the Internal Revenue Code,[1] taking the view that within the text of that section the amounts reported by them were received upon the retirement of notes "with interest coupons or in regis-

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

tered form," and that therefore the amounts "shall be considered as amounts received in exchange" for such notes, so that the amounts received constituted capital gain. There is no argument as to the length of time the notes were held. In our opinion the petitioners' views may not be sustained, for there is no contention that the notes carried interest coupons and nothing in the record indicates that they were in registered form, within the meaning of the statutory expression.

On this question the respondent relies primarily upon *Gerard* v. *Helvering*, 120 Fed. (2d) 235, while the petitioner relies equally firmly upon *Stoddard* v. *Commissioner*, 141 Fed. (2d) 76, from the same Circuit Court of Appeals, the Second Circuit. In the *Gerard* case, the court construed the statutory expression "in registered form," and in our opinion very pertinently and correctly defined it as follows:

* * * Since the bond had no coupons she cannot succeed unless it was "in registered form," a phrase whose meaning in this context is entirely plain. It refers to the common practice in the issuance of corporate bonds which allows the holder of one or more coupon bonds of a series the option to surrender them and have one bond "registered" upon the books of the obligor or of a transfer agent; or the holder may subscribe for such a bond in the first place. The purpose is to protect the holder by making invalid unregistered transfers, and the bond always so provides upon its face. The mere fact that the debtor keeps books of account upon which the debt appears is altogether immaterial; to construe the statute as the taxpayer asks would in effect make the payment of any corporate debt—"evidence of indebtedness"—a "retirement" of "capital assets," for almost all corporations keep books. It is scarcely necessary to labor the answer to so plain a misinterpretation.

It will be noted that under the above language petitioners' reliance upon the fact that the obligations here in question were at all times entered, noted, and carried in the books, records, and accounts of the obligor corporation can not stand; nor is record in the county register compliance with the statute.

Petitioners, however, strongly urge that the *Gerard* case may not be reconciled with the *Stoddard* case, and that the latter in effect overrules the former. With this view we can not agree. Careful examination of the *Stoddard* case discloses that the court did not consider any question as to the meaning of the expression "in registered form." Though it is true that the court did state that "the amount received in retirement of a note is to be considered as received in exchange therefor," that this language was used only with reference to the statutory expression "retirement" is clear from the fact that immediately after the above language it is stated, "And this note was retired within the meaning of above subdivision (f)." Not only so, but the court immediately

recited and relied upon *McClain* v. *Commissioner*, 311 U. S. 527, wherein the only question at hand was the definition of "retirement" and where the Court spoke of retirement "of such securities as are here involved" and of the fact that the amounts received therefor shall be considered as received in exchange therefor. It is apparent that in the *McClain* case the Court was assuming, and the parties did not disagree, that the bonds involved were within the category encompassed by section 117 (f), that is, that they were in registered form or had interest coupons attached. In the absence of anything to indicate otherwise, or to raise any question in this regard, in the *Stoddard* case, it is clear that it does not inferentially, just as it does not expressly, overrule the *Gerard* case.

We hold that the notes here involved were not in registered form, and therefore that the amounts received thereon in the taxable years by the petitioners were ordinary income to the petitioners, and not capital gain.

The respondent on his part, and by amended answer, in the case of petitioner Joseph E. Gilbert only, raises the contention that not merely the reported portion of the amounts received in the taxable years by petitioner Joseph E. Gilbert were taxable, but that the entire amount received is subject to tax, on the theory that he had in prior years collected more than his cost basis in the notes, leaving taxable the entire amounts received in the years here involved. To meet this contention the petitioner relies upon *Shafpa Realty Corporation*, 8 B. T. A. 283, and in our opinion that case indicates that the respondent's contention may not soundly be sustained. It is to be noted that in the original transaction of sale in 1927 petitioner Joseph E. Gilbert received for his property, in money and value of notes received, exactly the amount of his "equity" in the property—that is, having a cost basis of $4,100,000, he received, above $2,100,000 mortgages already on the property, $2,000,000, of which $1,000,000 was cash and $1,000,000 was the fair market value of $1,650,000 face value of notes received. He had, therefore, neither profit nor loss upon that transaction, and though the respondent suggests the law as to installment sales, it is clear that the present question has nothing to do with the transaction of sale in 1927. On it no profit was reportable, either in installments or otherwise, for there was none. We are concerned only with the fact that upon notes of a value of $1,000,000 the petitioners, so far as they were concerned, later collected the face value, a greater amount. The respondent's position is, in substance, that in such case the first moneys collected on the notes must be entirely applied upon the cost basis, and that only thereafter need the holder account for profit. This was, however, exactly the view in question in the

*Shafpa Realty* case, and therein it was said that "It is no more correct to say that the part payment was all a return of principal than it is to say that it was all a return of income."

It is clear to us that the amounts received by petitioner Joseph E. Gilbert (respondent does not raise the question in Victor B. Gilbert case) in a previous year may not properly be labeled as all a return of principal. The petitioner merely received some money in the *Shafpa Realty* case; and the amount collected was allocated between principal and income. In this matter the petitioner, in his return for 1933, gave the amounts received like treatment, and the Commissioner accepted it. He questioned it in the present matter only by amended answer, alleging that he erred in taxing as ordinary gain only the amounts reported by the petitioner (instead of the full amounts received). We think that the Commissioner has demonstrated no such error. In *Burnet* v. *Logan*, 283 U. S. 404, relied upon by him, the amounts to be received in the future had no ascertainable fair market value, whereas here it is agreed that in 1927, $1,000,000 was the fair market value of the $1,650,000 face value of notes. We find no parallel in that case to the present question, and we find no error on the part of the respondent in taxing as ordinary income the stipulated amounts returned by the petitioners.

> *Decisions will be entered for the respondent, in the amounts set forth in the deficiency notices.*