A. B. CULBERTSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

RUBY CULBERTSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 22757, 22758. Promulgated June 30, 1950.

*R. B. Cannon, Esq.*, for the petitioners.
*John W. Alexander, Esq.*, for the respondent.

### OPINION.

JOHNSON, *Judge*: Petitioners maintain that the collection by them in 1945 of the face amount of the $10,000 note they had received in 1944 as part of the consideration for the sale of the Mayo Courts property constituted long-term capital gain. It is their position that the note had no fair market value in 1944 and that hence they correctly reported in 1944 as proceeds from the sale of the property only the $70,000 in cash they received in that year. But they maintain that under Regulations 111, section 29.44–2 and section 29.44–4, the amount they realized on the note in 1945 also constituted part of the proceeds from the sale of the property for the determination of gain or loss, as a "deferred-payment sale of real property not on the installment plan", and was thus taxable as long term capital gain in 1945.

Respondent contends that the note had a fair market value in 1944— he does not say of how much—and that therefore the sale of the property was a closed transaction in 1944. He has accordingly determined that the collection of the $10,000 note in a subsequent year, not constituting a sale or exchange of a capital asset, resulted in ordinary income to petitioners.

Under section 111 (b) of the Internal Revenue Code, "the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." Normally, a sale will be a closed transaction in the year of the receipt by the vendor of such money and property other than money, in this case, 1944. However, Regulations 111, sections 29.44–2 and 29.44–4, provide an exception in "Deferred-payment sales not on the installment plan, that is, sales

in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made exceed 30 per cent of the selling price" (the case here, the $70,000 cash being more than 30 per cent of $80,000). In such sales, the Regulations provide:

If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold, and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount being the difference between the reduced basis as provided above and the amount realized therefor. * * *

Accordingly, petitioners are correct in their contention, which respondent does not dispute, that if the note for $10,000 had no fair market value in 1944, they realized gain on its collection in 1945 only as gain on the original sale of real property in 1944, i. e., as long term capital gain.

However, the burden is on petitioners to show that the note had no fair market value in 1944. The facts show that the $10,000 lien was subordinate to a first lien in the amount of $70,000 and that the property the previous year (1943) had sold for only $42,858.55. The accountant who prepared petitioners' returns in 1944 and 1945 stated that in his opinion the note was valueless when given (in November, 1944). However, he testified that he was quite familiar with the financial condition of Hazel Dean Reeves and her husband, the makers of the note, and that they were solvent at the time and owned the Normandy Development Corporation, a real estate development, and other assets. Moreover, though the first monthly payment due on the note on December 1, 1944, was not made, the note was paid in full on March 1, 1945.

After careful consideration of this and other evidence and testimony in these proceedings, we have found as a fact that the fair market value on November 1, 1944, of the second lien note for $10,000 here in question was $3,000.

Petitioners, however, state that they reported the sale of Mayo Courts as a deferred-payment sale in their 1944 returns and that the acceptance by respondent of those returns was tantamount to an admission by him that the note had no fair market value. The facts do not support such a contention. There was no indication on the face of the 1944 returns that a note had been received by petitioners in addition to $70,000 cash on the sale. The "Gross sales price (contract price)" was simply reported as "$70,000.00." Though petitioners in good faith may not have mentioned the note because they believed it had no fair market value, under the circumstances we can

not hold that respondent approved such zero valuation. The fact that the accountant who prepared the returns mentioned the note on a work sheet is, of course, wholly immaterial.

Having found that the fair market value of the note received by petitioners in 1944 was $3,000, we are still faced with the question, the ultimate question in this case, of how to treat for tax purposes the $10,000 collected by petitioners on the note in 1945. This Court was faced with an identical question in *Victor B. Gilbert*, 6 T. C. 10. In that case the taxpayer received in 1927 for property in which he had a cost basis of $4,100,000 exactly the amount of his base, $4,100,000—that is, he received above $2,100,000 mortgages already on the property, $2,000,000, of which $1,000,000 was cash and $1,000,000 was the fair market value of $1,650,000 face value of notes received. Thus he had neither profit nor loss on that transaction. However, he later collected the face value of $1,650,000 on the notes of a fair market value of $1,000,000. This Court held that the collections should be allocated between principal and ordinary income in the proportion above indicated. In other words, $1,000,000 constituted return of principal and $650,000 ordinary income. (It is, of course, well settled that where a note is paid by the maker in satisfaction of the maker's liability thereon, capital gain does not result. *Lee* v. *Commissioner* (C. C. A., 7th Cir., 1941), 119 Fed. (2d) 946.)

Following the *Gilbert* case we hold that of the $10,000 collected by petitioners, $3,000 constituted nontaxable return of principal and $7,000 ordinary income in 1945.

Respondent, citing the *Gilbert* case, urges that the entire $10,000 constituted ordinary income to petitioners in 1945. Though he says that the note had a fair market value in 1944, he contends that petitioners had no basis in the note, presumably because they gave it none in their returns. However, it is clear from section 111 (b), Internal Revenue Code, *supra*, that the note to the extent of its fair market value of $3,000 should have been reported by petitioners in their 1944 returns as part of the proceeds from the sale of Mayo Courts. The failure of petitioners so to report it was an error in the 1944 returns. That year is not before us here, and it is the general rule that amounts erroneously omitted from income of an earlier year can not be included by respondent in the taxable income of a later year. *Greene Motor Co.*, 5 T. C. 314; cf. *Ross* v. *Commissioner*, 169 Fed. (2d) 483. Since we have found that the fair market value of the note was $3,000 when received in 1944, whether reported or not, under the *Gilbert* case only the difference between that amount and the $10,000 collected, or $7,000, constituted ordinary income to petitioners in 1945, and we so hold.

*Decisions will be entered under Rule 50.*