WILLIAM A. AND MARGARET K. TOMBARI, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76396. Filed November 10, 1960.

*Francis J. Butler, Esq.*, for the petitioners.
*George E. Constable, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The Commissioner has determined deficiencies in the income tax of petitioners for the years 1951 and 1952 in the

respective amounts of $31,454.21 and $538.70. The only adjustment in issue for 1951 is adjustment "(d) Long-term capital gain $39,322.33" and is explained in the deficiency notice as follows:

(d) It has been determined that the payments received in the year 1951 from the sale of the East Mission Pharmacy together with the realty in which its operations were conducted, exceeded 30% of the selling price. It is held, therefore, that the gain cannot be reported on the installment basis. The gain of $129,777.32, as shown in your return, is taxable in full in 1951. The adjustment is as follows:

| | |
|---|---:|
| Gain on sale per your return | $129,777.32 |
| 50 percent taxable | 64,888.66 |
| Installment gain reported $51,132.65, 50 percent taxable | 25,566.33 |
| Increase in taxable long-term capital gain | $39,322.33 |

Petitioners by appropriate assignments of error contest the correctness of the foregoing adjustment. Petitioners by amended petition raise the issue that they incorrectly reported on their returns for 1951 and 1952 certain percentages of payments which they received from the Arlington Hotel contract as ordinary income, whereas they should have reported them as capital gains. Petitioners claim overpayments for both taxable years.

All of the facts have been stipulated and as stipulated are incorporated herein by reference.

Some of the adjustments made by the Commissioner in his determination of the deficiencies have been settled by agreement of the parties and effect will be given to the settlements of the parties in a recomputation under Rule 50.

The facts, as stipulated, may be summarized as follows:

Petitioners are husband and wife with principal residence in Spokane, Washington. Their Federal income tax returns for the taxable years were filed with the district director of internal revenue for the State of Washington at Tacoma.

Prior to the taxable years involved petitioners owned and operated the East Mission Pharmacy (hereinafter referred to as the pharmacy) which is located in Spokane. On January 23, 1951, petitioners sold to Henry C. Lewis and wife the pharmacy, together with the real estate on which it was located. On the Federal income tax return as filed by the petitioners for the taxable year 1951, the sale of the pharmacy was reported on the installment basis and the petitioners thereby reported only a percentage of the gain on the sale rather than the entire amount. The selling price recited in the sale agreement was $300,000 and petitioners used the $300,000 as the selling price in computing the percentages under the installment method of reporting the gain.

The sale agreement dated January 23, 1951, recites, among other things, as follows:

TOTAL PURCHASE PRICE to be paid by the Purchasers to the Vendors is THREE HUNDRED THOUSAND DOLLARS ($300,000.00) payable as follows: [Here follows a description of how the $300,000 purchase price was to be paid.]

The parties performed the contract during the years 1951 and 1952, as follows:

(a) On January 23, 1951, $5,000 was paid to petitioners.

(b) An Arlington Hotel sale agreement with Gus Nelson owned by Henry C. Lewis was assigned on January 23, 1951, to the petitioners by Henry C. Lewis and his wife. The amount of $75,987.64 ($75,777.15 as principal and $210.49 accrued interest to February 1, 1951) was still owing by Gus Nelson, the obligor on the contract.

(c) The buyers executed a note payable to petitioners for $19,012.36, which was paid during 1951.

(d) The mortgage of $67,157.83 was assumed by the buyers.

(e) Principal payments on the remaining $132,842.17 were to be paid monthly by the purchasers and were made by the buyers to the petitioners as follows:

| | |
|---|---|
| 1951 | $12, 770. 77 |
| 1952 | 6, 734. 54 |

(f) The buyers assumed accrued taxes in the amount of $953.46.

The Arlington Hotel sale agreement between Henry C. Lewis and Gus Nelson referred to above had a face amount of $75,777.15, exclusive of interest, but the fair market value of the Arlington sale agreement January 31, 1951, including interest, was $50,000. During the taxable years 1951 and 1952, the petitioners collected principal payments from Gus Nelson and his wife on the Arlington Hotel sale agreement as follows:

| | |
|---|---|
| 1951 | $4, 139. 59 |
| 1952 | 4, 418. 37 |

In both the taxable years 1951 and 1952 the petitioners, on their Federal income tax returns as filed for the taxable years, treated the percentage of gain from the amounts received from Gus Nelson and his wife on the Arlington Hotel sale agreement as ordinary income and not as capital gain.

The issues which we have to decide in the instant proceeding are as follows:

### Issue 1.

Under the stipulated facts are petitioners entitled to report for income tax purposes the gain received by them on the sale of the pharmacy on the "installment basis" provided for in section 44 of the

1939 Code, or is the "selling price" stated in the contract of sale to be reduced by an amount, as contended by respondent, which would result in petitioners' receiving more than 30 per cent of the selling price in the year of sale, thereby making the section inoperative.

## Issue 2.

Did the petitioners improperly report a percentage of the amount collected on the Arlington Hotel contract as ordinary income on their Federal income tax returns as filed in both the taxable years 1951 and 1952, or should the said percentages of income have been reported as capital gain, thereby resulting in overpayment in Federal income taxes for the taxable years. This issue was raised by the petitioners in an amended petition. Petitioners on their return treated the gain as ordinary income.

We shall take up the issues in the order stated above.

## Issue 1.

In 1951, petitioners sold certain property which they owned in the city of Spokane and reported the profit from such sale as capital gain and elected to report such gain on the installment basis under section 44, I.R.C. 1939.[1]

The difference between the parties on this issue is as to what the facts show to have been the selling price of the property. Although the sale agreement entered into by petitioners and Henry C. Lewis and wife on January 23, 1951, referred to the price to be paid as the "purchase price" instead of as the "selling price" we look upon the two as being synonymous and shall so treat them in this report. The purchase price of the property was stated in the contract to be $300,000. Notwithstanding this fact, respondent contends that because the Arlington Hotel contract was other property taken in as part of the purchase price at its face value of $75,987.64, nevertheless it had only a fair market value of $50,000 and that, therefore, the selling price must be reduced by $25,987.64. When that is done, contends the respondent, the amount received as payment in 1951 by petitioners was more

[1] SEC. 44. INSTALLMENT BASIS.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALITY [PERSONALTY].—In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

than 30 per cent of the selling price. Hence, the transaction does not qualify for treatment under section 44 of the 1939 Code. Petitioners contend that respondent's position confuses two separate and distinct concepts, i.e., "selling price" and "amount realized upon the sale." They contend that these two concepts are entirely different for income tax purposes.

Petitioners compute the selling price of $300,000 under the contract as follows:

| | |
|---|---:|
| Cash | $24,012.36 |
| Arlington Hotel contract assigned | 75,987.64 |
| Pharmacy mortgage (assumed) | 67,157.83 |
| Contract balance to be paid by Lewis | 132,842.17 |
| Total selling price | 300,000.00 |

Respondent computes the selling price as follows:

| | |
|---|---:|
| Cash | $24,012.36 |
| Arlington Hotel contract assigned, fair market value | 50,000.00 |
| Pharmacy mortgage (assumed) | 67,157.83 |
| Contract balance to be paid by Lewis | 132,842.17 |
| Total selling price | 274,012.36 |

Thus, it will be seen that the only difference between the computation of the parties is as to the manner in which the Arlington Hotel contract should be treated. Petitioners treat it at its full face value of $75,987.64 in computing the selling price, whereas respondent treats it at its fair market value. We think respondent must be sustained. The selling price is ordinarily determined from the terms of sale and the arrangement between the parties. 2 Mertens, Law of Federal Income Taxation, sec. 15.17. In the instant case, the contract of sale entered into by petitioners and Lewis recites: "TOTAL PURCHASE PRICE to be paid by the Purchasers to the Vendors is THREE HUNDRED THOUSAND DOLLARS." Certainly, under ordinary circumstances, that would fix the amount of the selling price at $300,000, as for example, in the instant case, if the payments provided for in the contract had been:

| | |
|---|---:|
| Cash | $100,000.00 |
| Pharmacy mortgage assumed | 67,157.83 |
| Contract balance to be paid by Lewis | 132,842.17 |
| Total | 300,000.00 |

In our opinion there would be no question but that the selling price was $300,000. But the above figures do not represent what was done. Instead of receiving $100,000 cash in the taxable year, petitioners received $24,012.36 in cash and the Arlington Hotel contract which had a face value of $75,987.64 but a fair market value of only $50,000.

This latter fact, we think, makes a crucial difference. Can it be said that under the foregoing circumstances the total purchase price which Lewis paid and agreed to pay was $300,000? We do not think that it can be so said. Certainly, in calculating the initial payment for the year 1951 which both parties agreed was $86,783.13, the Arlington Hotel contract was figured at $50,000, its fair market value when received. Can it be true that this hotel contract, being "other property" received in the trade, shall be treated at its fair market value in computing the initial payments received in 1951 and at its face value in computing the selling price? That does not seem logical to us. For reasons we have already stated, we do not think it can be so held.

We sustain the Commissioner as to issue 1.

### *Issue 2.*

Respondent states this issue in his brief as follows:

Where petitioners sold a pharmacy and in part payment received a hotel contract receivable with a face value in excess of its fair market value, a part of the collections on the hotel contract should be reported as ordinary income in each year that collections are made.

Petitioners, on their part, contend that they incorrectly reported on their returns for each of the taxable years, as ordinary income rather than capital gain, percentages of amounts which they received in each of the taxable years as payments on the Arlington Hotel contract. There is no dispute concerning the percentage of gain from such collections.

In passing upon this issue, it should be noted that respondent makes no contention that petitioners are not entitled to capital gains treatment on the gain which resulted from the sale of the pharmacy property. He has accorded capital gains treatment to that transaction. What he does contend with respect to that particular transaction is that the entire capital gain is taxable in 1951 and cannot be returned on the installment basis. We have sustained respondent on that issue. But issue 2 involves an entirely different proposition. That difference will be understood when we consider the following facts:

In 1951, petitioners sold their pharmacy business and were assigned the Arlington Hotel contract in part payment. This hotel had been sold by the buyer of the pharmacy and in the sale he had received a contract receivable which had a face value of $75,777.15, exclusive of accrued interest, and a fair market value of $50,000 when assigned to petitioners. In 1951 and 1952, petitioners collected $4,139.59 and $4,418.37, respectively, from the vendee of the hotel.

Respondent contends that petitioners should report as ordinary income that proportion of collections in each year which the difference between the fair market value and the face value bears to the face. A

similar contention on the part of the Commissioner was approved in *Shafpa Realty Corporation*, 8 B.T.A. 283. In that case the taxpayer sold property in 1920 and received in part payment a second mortgage with a fair market value of $240,000 and a face value of $300,000, of which $10,000 was collected in 1921. The Board held that the 1921 collection was taxable in the ratio which the difference between the fair market value and the face bears to the face. This case was cited with approval in *Victor B. Gilbert*, 6 T.C. 10. Respondent contends that to the same effect is *A. B. Culbertson*, 14 T.C. 1421. In that case the Court followed *Victor B. Gilbert, supra*, and commented that capital gain does not result where a note is paid by the maker in satisfaction of his liability.

We hold against petitioners on issue 2.

*Decision will be entered under Rule 50.*