**Earl A. PHILLIPS and Dorothy M. Phillips, Appellants,**

v.

**William E. FRANK, District Director of Internal Revenue, Appellee.**

**No. 17219.**

United States Court of Appeals Ninth Circuit.

Oct. 10, 1961.

Warren V. Clodfelter, Allen A. Bowden and Birney N. Dempcy, Seattle, Wash., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., Seattle, Wash., for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

This is an action to recover federal income taxes allegedly overpaid by appellants for the calendar years 1955, 1956 and 1957, recovery of which was denied by the district court. See Phillips et al. v. Frank, etc., D.C., 185 F.Supp. 349.

Appellants are husband and wife who filed joint returns on the cash basis for the taxable years above stated. The husband, Earl A. Phillips, will hereinafter be called the taxpayer.

During the years in question the taxpayer's accounting records were kept on the cash receipts and disbursements method, and during these years the taxpayer received payments on real estate contracts owned by him. All of said contracts were purchased by taxpayer in the years in question or prior thereto. Taxpayer did not perform any services in the making of the contracts, but only purchased contracts negotiated by others, the unpaid principal balances of which were payable in periodic installments. In each

instance, the price paid was an agreed percentage less than the principal amount due on the contract, which percentage was not the same on all contracts. In other words, they were purchased at a discount. Contracts of the type involved were bought and sold by investors, and all of the contracts owned by taxpayer during the years in question were held as investments. Taxpayer considered each contract to have a value equal to the amount paid by him therefor at the time of the purchase. No security for payment of any of the contracts was held by taxpayer other than a right to repossess in case of default by the vendee, and no promissory note was held by the taxpayer for the unpaid balance of the purchase price.

While one of the admitted facts stated in the pretrial order is that the contracts involved in the instant case are of a type bought and sold by investors, the uncontradicted testimony before the district court is that there is no open market for the sale of the contracts in question; and that they were difficult to sell and that it took considerable time—two or three years—to dispose of them. It is further uncontradicted in the record that a large portion of the contracts purchased by the taxpayer were "highly speculative", consisting of second, and in some instances third liens, on the real properties which were the subject of the contracts, which prior liens taxpayer was required to keep "in order" so as to be able to convey title upon payment in full of the contract price. In some instances, taxpayer suffered losses due to defaults by vendees which resulted in repossessions and sales of the properties. Each contract was purchased by taxpayer on an individually negotiated basis in light of such factors as the value of the real property involved, the existence of prior liens, the burdens and responsibilities of the taxpayer, and the financial ability and credit standing of the vendee.

In posing the question for decision, the district court stated:

"A percentage of each contract payment, in the proportion of the total discount to the total unpaid contract balance, was treated by the Commissioner as discount income taxable as ordinary income. The sole issue presented is whether the Commissioner erred in such determination." Phillips et al. v. Frank, etc., supra, 185 F.Supp. at page 350.

In disposing of the issue adversely to the taxpayer the district court stated:

"It is universally recognized that interest is earned and becomes taxable income as paid from period to period, regardless of whether thereafter principal be repaid. There is no logical basis or legal authority justifying different treatment of discount income." Ibid., at page 350.

It is not completely clear in what sense the district court used the term "discount income" but the clear implication is that the court used the term to mean a charge for the use of money and, therefore, equivalent of interest. Interest in the business world commonly presupposes a debtor-creditor relationship under which a lender advances capital to a borrower who promises to pay the amount borrowed plus an additional amount as compensation for the use of money. Income earned by lending a sum of money less than the face value of the obligation received as consideration for the loan may be equivalent to interest. Such income has been frequently denominated "discount income" and we recognize that such income should have and generally has had the same tax treatment as interest.

In the instant case, taxpayer purchased for cash (no loans being involved) from vendors thereof executory contracts entered into between such vendors and other persons covering the sale and purchase of real properties. None of such vendors agreed to pay or return to taxpayer any sum, either principal or interest. The contracts were acquired by taxpayer unconditionally, not by way of security for loans. All taxpayer received from the vendors as consideration for the purchase money paid to them were assignments of executory contracts. The district court found as a fact that such

contracts were purchased by taxpayer. Clearly, the transactions between the taxpayer and the several vendors were sales and purchases. Under the facts of this case it would be a great distortion to hold that any part of the contract payments received by taxpayer for the periods under review from the several vendees constitutes "discount income" and therefore equivalent of interest.

It is clear, however, that the district court regarded the amount of discount from the unpaid principal balance at which each contract was purchased as income to taxpayer and that a portion of such income was received by taxpayer as income taxable to him, as a pro-rated part of each principal payment on the unpaid principal balance of each contract.

Only four cases have been called to our attention wherein consideration has been given the tax treatment to be accorded periodic payments received by investors on notes, mortgages, or contracts relating to the sales of real properties, which notes, mortgages, or contracts were acquired by investors by purchase from vendors who, upon sale of real properties, received such notes, mortgages, or contracts from vendees of such real properties in payment, or part payment, of the purchase price of such real properties as distinguished from the tax treatment to be accorded periodic payments received by vendors from vendees on notes, mortgages, or contracts given by such vendees in payment, or part payment, of the purchase price in the sales of real properties.

The four cases were decided by the Tax Court and its predecessor, the Board of Tax Appeals.

The earliest case is Harris Trust and Savings Bank v. Commissioner of Internal Revenue, 1931, 24 B.T.A. 498. In this case taxpayer purchased a real estate contract (no promissory note involved) for $151,384.64 upon which $273,-332.16 remained to be paid in 164 monthly installments. The fair market value of the contract at date of purchase was $150,000. The Commissioner urged that the transaction entered into by the taxpayer "partakes of the nature of a deferred payment sale on the installment basis and that profits should be reported yearly upon payments received." Such contention was rejected by the Board of Tax Appeals which held that the taxpayer was not required to report any taxable gain until taxpayer had received payments aggregating his costs in the acquisition of the contract.[1]

The next case is Vancoh Realty Co. v. Commissioner of Internal Revenue, 1936, 33 B.T.A. 918, cited by the district court in support of its decision. This case involved a corporation engaged in the business of buying at a discount notes secured by mortgages and trust deeds. The taxpayer kept its books on an accrual basis. In the course of the opinion it is stated:

> "Here the petitioner did not perform any services in the making of these loans. It purchased loans made by others and paid therefor the principal of the note less an agreed percentage thereof, the difference between the face value and the amount paid being the discount.
>
> \* \* \* \* \* \*
>
> "The difference between the present value or purchase price and the face value of the obligation or note represents the discount. As the maturity of the obligation draws nearer, the value ordinarily increases. As the value increases with the lapse of time and the approach of the maturity date, the discount is being

---

1. Appellee urges that unless the Harris case can be distinguished on the ground that the taxpayer demonstrated that it was highly doubtful that the capital investment would ever be returned, such case was erroneously decided. We are unable to agree that the Harris case can be distinguished on such ground in view of the finding of the tax court that the fair market value of the contract was $150,-000 when acquired by the taxpayer. It should also be noted that contracts of the type involved in the Harris case were bought and sold in the Chicago real estate market at their fair market value.

earned. Hence, where books are kept on an accrual basis, the amount should be accrued as thus earned, whether paid or not."

The Board of Tax Appeals further distinguished the case from Shafpa Realty Corporation v. Commissioner of Internal Revenue, 8 B.T.A. 283,[2] also cited by the district court in support of its decision and heavily relied upon in appellee's brief.

The third case is Willhoit v. Commissioner of Internal Revenue, 1958, 27 T.C. Memo. 884, now on appeal to this court and relied upon by appellee who contends that such case implicitly overrules the Harris Trust case.[3]

The fourth case is Morton Liftin and Sylvia Liftin v. Commissioner of Internal Revenue, 36 T.C. —— No. 92. In this case taxpayer purchased interest bearing second deed-of-trust notes which were secured by second deeds of trust on residential property and which provided for repayment on the basis of monthly installments. The notes were purchased by taxpayer at discounts. The petitioner's investments in such notes were speculative and the amount of his income or profit realizable by reason of payments thereon in excess of the discount was uncertain. The taxpayer filed income tax return on a cash basis. The Commissioner urged that a proportionate part of each principal payment received by taxpayer on each note, measured by the percentage of discount at which the note was acquired constitutes ordinary income to taxpayer in the year of payment. Such contention was reject-ed by the Tax Court which held the taxpayer was entitled to apply all of the payments on principal to his costs until the full amount of the purchase price had been recovered and only thereafter should the principal payments be reported as ordinary income.

Seeking to sustain the judgment of the district court the appellee calls to our attention a line of cases in which a vendor sells real property and receives a note or mortgage in payment, or part payment, of the sales price. Under such facts, there is a line of cases which hold that the sale is considered completed even though full payment has not been received. The note or mortgage, regarded as equivalent to cash, is given a fair market value at the time of the sale, and the gain or loss on the sale is determined with reference to said fair market value. Often, the fair market value of the note or mortgage is less than its face value. In such case, the amount of the difference between the face value of the note or mortgage and the fair market value thereof as determined at the time of sale is regarded as ordinary income and periodic payments on the unpaid principal of the note or mortgage received by a cash basis taxpayer must be apportioned between return of principal and income. See Shafpa Realty Corp. v. Commissioner of Internal Revenue, 1927, 8 B.T.A. 283; Gilbert v. Commissioner of Internal Revenue, 1946, 6 T.C. 10; Culbertson v. Commissioner of Internal Revenue, 1950, 14 T.C. 1421. This rule has been extended to some other situations where payment is deferred..

2. "In Shafpa Realty Corporation, 8 B.T.A. 283, the taxpayer in 1920, sold a building and received in part payment a second mortgage with a face value of $300,000. For the purpose of arriving at the profit or loss sustained from the transaction in 1920, the taxpayer and the Commissioner agreed upon the market value of the second mortgage at $240,000. During 1921 the mortgagor made a payment of $10,-000 which the taxpayer considered as a return of principal, and the Commissioner held that $2,000 of the $10,000 represented income. The Board held that, since the Commissioner, in computing the gain, discounted the mortgage 20 percent, only 80 percent of the face value represented the basis for computing the gain upon the payments made on the mortgage, that each payment made was a payment on the face value of the mortgage and that 80 percent thereof represented a return on the principal and 20 percent a realization of discount or income. *It is obvious that this case is distinguishable from the instant proceeding on the facts."* (Italics added.)

3. We withhold further comment on the Willhoit case since it has been submitted for decision to another panel of this court.

Hatch v. Commissioner of Internal Revenue, 2 Cir., 1951, 190 F.2d 254 (death benefit payable over 10 years received as inheritance); Helvering, Commissioner of Internal Revenue v. Ames, 8 Cir., 1934, 71 F.2d 939 (exchange of note receivable from one corporation for an account receivable payable in monthly installments from a related corporation); Tombari v. Commissioner of Internal Revenue, 1960, 35 T.C. 250 (receipt by vendor of real property of a contract obligation of a third party).

On the other hand, there is a line of cases which hold that where a vendor of real property sells the same under contract unaccompanied by a promissory note or other evidence of indebtedness or mortgage, the contract obligation of the vendee cannot be said to be cash or its equivalent (the contract obligation having no fair market value) and that no gain is realized by the vendor until the contract payments by the vendee equal the vendor's basis in the property. Bedell v. Commissioner of Internal Revenue, 2 Cir., 1929, 30 F.2d 622; Stevenson v. Commissioner of Internal Revenue, 1927, 9 B.T.A. 552; Johnston v. Commissioner of Internal Revenue, 1950, 14 T.C. 560; Ennis v. Commissioner of Internal Revenue, 1951, 17 T.C. 465; and cases cited Mertens, Law of Federal Income Taxation, Vol. 2 § 11.06 (1961).

The distinction between a vendor who sells real property and receives a note, mortgage, or contract, from the vendee and the investor who purchases at discount such note, mortgage, or contract was recognized in Vancoh Realty Co., supra. Such distinction is also recognized by appellee. On page 16 of appellee's brief, it is stated:

"The taxpayer seeks to rely upon Ennis v. Commissioner, 17 T.C. 465, but that case is easily distinguishable. The taxpayer in that case was a vendor of real property, and this immediately sets that case apart from the case at bar. * * *"

It appears to us that appellee is "blowing hot and cold". On the one hand, the appellee cites as persuasive authority the Shafpa, Culbertson and Gilbert cases, supra, all of which are vendor cases, and on the other hand, contends that the vendor cases relied upon by appellants such as Ennis and Stevenson, supra, are inapposite because the taxpayers in such cases were vendors.

It is significant to note that the tax court refused to apply the rule of the vendor cases as applied in Shafpa, Gilbert and Culbertson in Liftin v. Commissioner of Internal Revenue, supra, although urged by the Commissioner to do so.

We deem it unnecessary to consider the validity of the distinction drawn in "vendor" cases between the so-called "note and mortgage" cases and the so-called "contract" cases in the two lines of cases above mentioned relating to vendors, although we must confess the distinction in some cases, appears to be illusory.

In the instant case, the taxpayer made a purchase not a sale.. Hence, no problem is presented as to any gain realized at the time of such purchase. The taxpayer recognizes that when periodic payments on each contract equal the purchase price of such contract, payments received by taxpayer in each year subsequent thereto must be treated as ordinary income in the year of receipt. Such is the law. Lee v. Commissioner of Internal Revenue, 7 Cir., 1941, 119 F.2d 946. The simple question presented on this appeal is: Did the cash basis taxpayer receive during the years under review any payments of which a portion should be allocated to and considered for tax purposes as payment of a portion of the profit which the taxpayer hopes to realize? Taxpayer received for his capital invested the right to receive the unpaid balances due on such contract. What were such rights worth when purchased?

There is no evidence in the record that such rights had any market value, fair or unfair, or any other value in excess of taxpayer's costs. There is no evidence in the record that taxpayer at any time could have sold such contracts at a profit. The only source from which he might reasonably expect to realize any part of his profit is from periodic payments sub-

sequent to the return to him of his invested capital. The fact that the likelihood of realizing a profit might increase as the amount of his investment decreases from receipt of periodic payments does not convert any part of such payments into payments on the hoped for or expected profit. Clearly, the payments received by taxpayer during the period under review aggregating less than his costs constitute a return of capital. A return of capital is not income.

The judgment of the district court is reversed.