RALPH R. GARROW AND EUNICE GARROW, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4055–63. Filed March 25, 1965.

*Wareham Seaman* and *Lee M. Galloway*, for the petitioners.
*David Brennan*, for the respondent.

OPINION

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year 1961 in the amount of $6,427.35.

The issues presented are: (1) Whether the respondent's allocation of the basis computed under section 334(c) of the Internal Revenue Code of 1954 among the various assets (including notes and accounts receivable and a claim for income tax refund) received by the petitioner in liquidation of a corporation in proportion to the net fair market values of such assets was proper, and (2) whether the respondent properly treated gain on the collection of the notes receivable, the accounts receivable, and the income tax refund claim as ordinary income, rather than as capital gain.

The facts have been stipulated and the stipulations are incorporated herein by this reference.

Petitioners are husband and wife who reside in Antioch, Calif. They filed a joint Federal income tax return for the taxable year 1961 with the district director of internal revenue at San Francisco, Calif. The petitioner Eunice Garrow is a party only by reason of having filed a joint income tax return with the petitioner Ralph R. Garrow, who hereinafter will be referred to as the petitioner.

In 1961 petitioner owned all the outstanding stock (68 shares) of a California corporation which operated under the name of Diablo Development Co. (hereinafter referred to as Diablo). Diablo adopted a plan of complete liquidation providing for a distribution in complete cancellation or redemption of all of its stock and for the transfer of all its property under the liquidation entirely within the month of June 1961. As the sole shareholder in Diablo, petitioner elected to have the gain realized on the surrender of his stock recognized and taxed in accordance with section 333 of the Internal Revenue Code of 1954. On June 8, 1961, pursuant to section 333 of the Code, petitioner executed Form 964 entitled "Election of Shareholder Under Section 333 of the Internal Revenue Code of 1954."

The assets and liabilities received by the petitioner on the liquidation

of Diablo, the adjusted bases to Diablo, and the fair market value of such assets, at the date of liquidation, were as follows:

| Assets | Adjusted basis to Diablo | Fair market value |
|---|---|---|
| Cash | $2,747.65 | $2,747.65 |
| Notes receivable | 9,473.16 | [1] 9,473.16 |
| Accounts receivable | 10,817.40 | [1] 10,817.40 |
| Claims receivable (refund of Federal income tax) | 2,310.13 | [1] 2,310.13 |
| Loan trust fund receivable | 283.33 | 283.33 |
| Land | 5,518.77 | 10,000.00 |
| Equipment less depreciation | 553.90 | 600.00 |
| Investment real estate: | | |
| 11 lots Cavallo Rd. ext | 1,100.00 | 15,000.00 |
| Lot—18th and Amber (SW) | 1,834.67 | 13,000.00 |
| 4-plex—Pittsburg depreciation | 15,035.01 | 22,500.00 |
| Lot NW Wilber | 2,512.50 | 18,000.00 |
| Lot SE Wilber | 2,512.50 | 18,000.00 |
| Stock—Garrow Land Co | 2,500.00 | 6,980.00 |
| Stock—R&B Land Co | 2,500.00 | 4,930.00 |
| | 59,699.02 | 134,641.67 |

| Liabilities | |
|---|---|
| Accrued interest | 53.60 |
| Accounts payable | 7,587.31 |
| Mortgage payable | 15,133.04 |
| Long-term loan payable | 12,190.56 |
| | 34,964.51 |

[1] These amounts also apparently represent the face amount of these receivables.

In return for such assets petitioner surrendered all of his stock having a basis to him of $6,800 and realized a gain in the amount of $92,877.16, computed as follows:

| | |
|---|---|
| Fair market value of assets received | $134,641.67 |
| Less: Liability assumed | 34,964.51 |
| | 99,677.16 |
| Less: Basis of 68 shares of stock canceled | 6,800.00 |
| Gain realized on liquidation | 92,877.16 |

During 1961 petitioner collected $8,047.80 of the notes receivable, $10,488.89 of the accounts receivable (the amount of notes and accounts receivable distributed has not been reduced by any charge to bad debts), and the total amount of the claim for refund of Federal income tax in the amount of $2,310.13.

On the date of the liquidation of Diablo such corporation had earnings and profits in the amount of $17,934.51.

In the 1961 income tax return petitioners reported no income on account of the $8,047.80 collected on the notes receivable, the $10,488.89 collected on the accounts receivable, and the $2,310.13 tax refund collected.

The respondent in the notice of deficiency for the taxable year 1961 determined that the petitioners were in receipt of ordinary income in the amount of $14,948 representing the excess of the amounts collected on the above three items over the bases of such items as determined by him. He determined the amount of the basis to be allocated to the property received on the liquidation in the following manner:

| | |
|---|---|
| Basis of stock canceled | $6, 800. 00 |
| Less: Cash received | 2, 747. 65 |
| | 4, 052. 35 |
| Plus: Gain recognized on the liquidation | 17, 934. 51 |
| Plus: Unsecured liabilities assumed by petitioner Ralph R. Garrow | 7, 587. 31 |
| Basis to be allocated among unencumbered assets | 29, 574. 17 |
| Specific liens against assets received | 27, 377. 20 |
| Total basis to be allocated | 56, 951. 37 |

Respondent then made an allocation of such total basis to the assets received on liquidation as follows:

| Asset | Fair market value | Amount of specific lien | Net fair market value | Basis allocated without regard to specific liens [1] | Total basis |
|---|---|---|---|---|---|
| Notes receivable | $9, 473. 16 | | $9, 473. 16 | $2, 680. 53 | $2, 680. 53 |
| Accounts receivable | 10, 817. 40 | | 10, 817. 40 | 3, 060. 89 | 3, 060. 89 |
| Claims receivable | 2, 310. 13 | | 2, 310. 13 | 653. 67 | 653. 67 |
| Loan trust fund receivable | 283. 33 | $283. 33 | 0 | 0 | 283. 33 |
| Land | 10, 000. 00 | | 10, 000. 00 | 2, 829. 60 | 2, 829. 60 |
| Equipment less depreciation | 600. 00 | | 600. 00 | 169. 78 | 169. 78 |
| 11 lots—Cavallo | 15, 000. 00 | | 15, 000. 00 | 4, 244. 40 | 4, 244. 40 |
| Lot—18th and Amber | 13, 000. 00 | | 13, 000. 00 | 3, 678. 48 | 3, 678. 48 |
| 4-Plex—Pittsburg | 22, 500. 00 | 14, 903. 31 | 7, 596. 69 | 2, 149. 56 | 17, 052. 87 |
| Lot—NW Wilber | 18, 000. 00 | | 18, 000. 00 | 5, 093. 28 | 5, 093. 28 |
| Lot—SE Wilber | 18, 000. 00 | 12, 190. 56 | 5, 809. 44 | 1, 643. 84 | 13, 834. 40 |
| Stock—Garrow Land Co | 6, 980. 00 | | 6, 980. 00 | 1, 975. 06 | 1, 975. 06 |
| Stock—R & B Land Co | 4, 930. 00 | | 4, 930. 00 | 1, 394. 99 | 1, 394. 99 |
| | 131, 894. 02 | 27, 377. 20 | 104, 516. 82 | 29, 574. 09 | 56, 951. 28 |

[1] Each asset receives pro rata share of $29,574.17.

Example: Notes receivable basis$=\dfrac{\$9,473.16}{\$104,516.82}\times\$29,574.17=\$2,680.53$

The respondent then computed the amount of gain resulting from the collections on receivables in 1961 as follows (treating such gain as ordinary income):

| Asset | Face value | Allocated basis | Collection 1961 | Portion of allocated basis applicable to collections in 1961 | Gain 1961 |
|---|---|---|---|---|---|
| Notes receivable | $9, 473. 16 | $2, 680. 53 | $8, 047. 80 | $2, 277. 21 | $5, 770. 59 |
| Accounts receivable | 10, 817. 40 | 3, 060. 89 | 10, 488. 89 | 2, 967. 94 | 7, 520. 95 |
| Income tax refund claim receivable | 2, 310. 13 | 653. 67 | 2, 310. 13 | 653. 67 | 1, 656. 46 |
| Total gain | | | | | 14, 948. 00 |

The petitioner having elected to have the gain upon the surrender of his shares of Diablo in the liquidation of that company recognized only to the extent provided in section 333 of the Internal Revenue Code of 1954,[1] the basis of the property received in the liquidation is, under section 334(c) of the Code,[2] to be the same as the basis of the stock canceled or redeemed, with certain adjustments. Section 334(c) does not set forth the manner of allocating such basis among the assets received. However, the Income Tax Regulations [3] specifically provide that such basis should be allocated to the various assets received in proportion to their net fair market values. The respondent's allocation was made in accordance with this regulation.

The petitioner contends that the regulations, in using the term "should" are not mandatory, but merely directory; that the allocation need not in all instances be based upon the relative fair market values of all the assets; that in the instant case, of the total basis computed

---

[1] SEC. 333. ELECTION AS TO RECOGNITION OF GAIN IN CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—In the case of property distributed in complete liquidation of a domestic corporation (other than a collapsible corporation to which section 341(a) applies), if—

(1) the liquidation is made in pursuance of a plan of liquidation adopted on or after June 22, 1954, and

(2) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within some one calendar month,

then in the case of each qualified electing shareholder (as defined in subsection (c)) gain on the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subsections (e) and (f).

\* \* \* \* \* \* \*

(e) NONCORPORATE SHAREHOLDERS.—In the case of a qualified electing shareholder other than a corporation—

(1) there shall be recognized, and treated as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, \* \* \* and

(2) there shall be recognized, and treated as short-term or long-term capital gain, as the case may be, so much of the remainder of the gain as is not in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock or securities acquired by the corporation after December 31, 1953, exceeds his ratable share of such earnings and profits.

[2] SEC. 334. BASIS OF PROPERTY RECEIVED IN LIQUIDATIONS.

(c) PROPERTY RECEIVED IN LIQUIDATION UNDER SECTION 333.—If—

(1) property was acquired by a shareholder in the liquidation of a corporation in cancellation or redemption of stock, and

(2) with respect to such acquisition—

(A) gain was realized, but

(B) as the result of an election made by the shareholder under section 333, the extent to which gain was recognized was determined under section 333,

then the basis shall be the same as the basis of such stock cancelled or redeemed in the liquidation, decreased in the amount of any money received by the shareholder, and increased in the amount of gain recognized to him.

[3] Sec. 1.334–2 of such regulations provides in part as follows:

"The basis of assets (other than money) acquired by stockholders in a liquidation upon which the amount of gain recognized was limited under section 333 shall be the same as the basis of the shares of stock redeemed or cancelled, decreased in the amount of any money received and increased in the amount of gain recognized and the amount of the unsecured liabilities assumed by the stockholders. The amount thus arrived at should be allocated to the various assets received on the basis of their net fair market values (the net fair market value of an asset is its fair market value less any specific mortgage or pledge to which it is subject). To that portion of the basis thus determined, for each property against which there is a lien, should be added the amount of such lien. \* \* \*"

under section 334(c), there should first be assigned to the notes receivable, the accounts receivable, and the income tax refund claim amounts equal to the adjusted bases of those assets in the hands of Diablo.; and that the remainder of the basis should be allocated to the other assets in proportion to their fair market values. Alternatively, he contends that the basis should be allocated to all the assets received in liquidation in proportion to the adjusted bases thereof in the hands of Diablo. He further contends that if the regulations were held to require the method of allocation employed by the respondent, such regulations would not properly carry out the purpose of section 333 and that they would be arbitrary, unreasonable, and invalid.[4]

We think the petitioner is in error in his interpretation of the meaning of the regulations. In our opinion the regulations are mandatory in providing that the basis computed under section 334(c) be allocated to all the assets received in the liquidation in proportion to their net fair market values. Furthermore, we do not consider such regulations to be arbitrary or unreasonable. Had the petitioner not made the election under section 333 the gain, measured by the excess of the fair market value of the assets received, including all receivables, over the basis of the stock surrendered, would have been recognized. As a condition to the limited recognition of gain at the time of liquidation, Congress required that the assets received, including all receivables, take the basis of the stock surrendered for purposes of computation of gain upon any subsequent disposition of the assets. Actually, we know of no more reasonable method of allocating such basis to carry out the congressional purpose than that set forth in the regulations. Since the regulations are not unreasonable or plainly inconsistent with the statute, they must be upheld. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496. It is also to be noted that the regulations have remained substantially unchanged since the promulgation of article 113 (a)(18)–1 of Regulations 101 (under the Revenue Act of 1938), and that in the light thereof there has been reenactment of the statute by Congress, implying congressional approval of the regulations. *Helvering* v. *Winmill*, 305 U.S. 79. We approve the allocation of basis as determined by the respondent.

---

[4] The substance of the petitioner's contention appears to be that the predecessors of sec. 333 of the 1954 Code, namely, sec. 112(b)(7) of the Revenue Act of 1938 and the 1939 Code, were enacted primarily for the purpose of permitting the liquidation of domestic personal holding companies and other companies having assets which had appreciated in value, and permitting the postponement of taxation of any such appreciation in value of such assets until the shareholders actually disposed of them, and that in view of such purpose the most logical method of allocation of basis, to carry out the congressional purpose, is the first method which he advocates. While it appears that one of the principal purposes for the enactment of sec. 112(b)(7) of the Internal Revenue Code of 1939 was to encourage the liquidation of personal holding companies and other domestic companies by deferring taxation of the shareholders on the appreciation of certain corporate assets received by them in liquidation (S. Rept. No. 2375, 81st Cong., 2d Sess., p. 80), it is clear that the section applies to liquidations of any type of corporation and to any type of asset distributed in liquidation.

The petitioner also contends that any gain which is recognized to the petitioner upon the collection of any of the described receivables must be treated as long-term capital gain. He argues that this result follows because of the fact that in an ordinary liquidation the gain realized by the shareholder upon surrender of his stock is capital gain and because of the fact that section 333 is a relief measure which was intended to postpone the recognition of such gain. Substantially the same contentions were made and rejected in *Mace Osenbach*, 17 T.C. 797, affd. (C.A. 4) 198 F. 2d 235. In the *Osenbach* case the Court of Appeals stated in part:

The Commissioner treats the liquidation as a closed transaction. Petitioner considers the liquidation as an open transaction until realization on the liquidated assets. The liquidation, petitioner asserts, stamps the character of the transaction as a capital one and the subsequent realization measures the gain, and gives the cue for tax incidence.

It is quite clear that ordinarily (apart from special statutes such as Section 112(b)(7), which we are now considering,) when a taxpayer makes a gain from the sale or exchange of a claim or chose in action, this is taxable as a capital gain; while if the gain results from the collection of the claim or chose in action, this is taxable as ordinary income. *Fairbanks* v. *United States*, 306 U.S. 436 * * *

\* \* \* \* \* \* \*

liquidation under Section 112(b)(7) was expressly made elective by Congress. The responsibility of choice was completely that of the taxpayer, who may not fairly complain if, having made the election, the results are not as advantageous as he had hoped. Congress did not try to provide a panacea for all the ills to which shareholders in holding corporations might be heir.

If Congress intended that the transaction should not in its entirety be regarded as closed, we think there would have been express specific provisions in the statute for future taxation of such part as was not regarded as closed. Subsequent transactions must stand on their own feet and be taxable at ordinary or at capital rates depending upon whether or not they fall within the terms of Section 117 which limits "capital gain" to "gain from the sale or exchange of a capital asset". Here taxpayer's subsequent dealings with the loans, discounts, and other claims, did not involve a sale or exchange but collection, and hence, could not qualify as capital transactions, even though his title to the assets had originated in the closed, completed liquidation under Section 112(b)(7).

The petitioner contends that the closed transaction concept adopted by us and approved by the Court of Appeals in the *Osenbach* case is erroneous as applied to receivables collected immediately after liquidation, it being his position that such collection is a part of the liquidation itself, and he requests us to reject such concept. However, we are of the opinion that the *Osenbach* case was correctly decided, and that the principle is equally applicable in the instant case involving section 333 of the Internal Revenue Code of 1954. See also *Tombari* v. *Commissioner*, (C.A. 9) 299 F. 2d 899, affirming 35 T.C. 250. The respondent did not err in treating the gain derived by the petitioner upon the collection of the receivables in question as ordinary income.

*Decision will be entered for the respondent.*